IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **RON HUNT**<br>1200 Golf Course Drive<br>Mitchellville, MD 20721<br><br>　　　　Plaintiff,<br><br>v.<br><br>**TRACEY'S INC. t/a<br>RITZ CABARET**<br><br>and<br><br>**FRANCIS LEE**<br><br>　　　　Defendants. | Civil Action No: L02-CV-2523<br>(WDQ) |

**PLAINTIFF RON HUNT'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT**

COMES NOW Plaintiff Ron Hunt, by and through counsel Jimmy A. Bell, Esq. and the Law Office of Jimmy A. Bell, P.C., and respectfully submits this Opposition to Defendants' Motion to Dismiss Amended Complaint.

Plaintiff's arguments will be more fully set forth in the accompanying Memorandum of Points and Authorities.

Respectfully submitted,

_____
Jimmy A. Bell, Esq.
Law Office of Jimmy A. Bell, P.C.
9610 Marlboro Pike
Upper Marlboro, MD 20772
(301) 599-7620
(301) 599-7623(fax)
Counsel for Plaintiff
Bar No. 14639

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| **RON HUNT** <br> 1200 Golf Course Drive <br> Mitchellville, MD 20721 <br><br> Plaintiff, <br><br> v. <br><br> **TRACEY'S INC. t/a** <br> **RITZ CABARET** <br><br> and <br><br> **FRANCIS LEE** <br><br> Defendants. | Civil Action No: L02-CV-2523 (WDQ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

COMES NOW Plaintiff Ron Hunt, by and through counsel Jimmy A. Bell, Esq. and the Law Office of Jimmy A. Bell, P.C., and respectfully submits this Memorandum of Points and Authorities in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss Amended Complaint.

For cause, Plaintiff states the following:

**STATEMENT OF FACTS**

Plaintiff Ron Hunt is an African-American citizen of the United States and the owner of the Nexus Gold Club, the largest gentleman's club on the east coast. From February of 2002 to May of 2002, Plaintiff Ron Hunt met with Defendant Francis Lee and his agent, Joerg Eichelberger, numerous times in order to discuss the purchase of the

Ritz Cabaret by the Plaintiff. Plaintiff Hunt also submitted written offers to the Defendant for the purchase of the Ritz Cabaret. Mr. Eichelberger specifically told Plaintiff Hunt no contingencies, including financing, would be accepted and that Plaintiff would have to pay $1.6 million to purchase the Ritz Cabaret in addition to a six percent (6%) buyer's fee. However, on May 22, 2002, Defendant Lee entered into a Contract of Sale with a white buyer which indeed contained contingencies and which did not include any provision for paying an additional six percent (6%) buyer's fee.

Defendant Lee not only discriminated against Plaintiff Hunt contractually, but also defamed Plaintiff Hunt to the employees of the Ritz Cabaret following Plaintiff Hunt's visits to the Defendant's establishment between February and May of 2002.

## ARGUMENT

**I.   JURISDICTION**

As a preliminary matter, Plaintiff Ron Hunt is indeed invoking federal question jurisdiction under 28 U.S.C. § 1331. This Court has original jurisdiction of the claims in Plaintiff's Amended Complaint as the Plaintiff is contending that Defendant Lee violated his civil rights under 28 U.S.C. § 1981 and §1982.

In the alternative, as Defendant Francis Lee is currently an inmate at Morgantown Federal Correctional Institution in Morgantown, West Virginia, and Plaintiff Ron Hunt currently resides at 1200 Golf Course Drive in Mitchellville, Maryland, and the matter in controversy is ten million dollars ($10,000,000.00), diversity of citizenship has been established under 28 U.S.C. § 1332.

**II.    STANDARD**

In *Conley v. Gibson*, 355 U.S. 41, 47, 78, S.Ct. 99, 103 (1957), the United States Supreme Court found that the FRCP does "...not require a claimant to set out in detail the facts upon which he bases his claim. Instead, all Rule 8 requires is 'a short and plain statement of the claim' that will give the defendant fair notice of what the Plaintiffs' claim is and the grounds upon which it rests." Furthermore, the determination to dismiss a complaint must be made by viewing the pleadings "in a light most favorable to the Plaintiffs, with alleged facts accepted as true." *Payne v. McDonald's Corp.*, 957 F. Supp. 749, 753 (D. Md. 1977).

**III.    THE CONTRACT OF SALE SIGNED BY DEFENDANT LEE ON MAY 22, 2002, REFUTES DEFENDANTS' CONTENTIONS THAT DEFENDANT LEE WAS PRECLUDED BY THE APRIL 10, 2002, PRELIMINARY FORFEITURE ORDER FROM ENTERING INTO A CONTRACT FOR THE SALE OF THE RITZ CABARET.**

In Defendant's Motion to Dismiss Amended Complaint, the Defendant contends that he lacked the capacity to enter a binding contract to sell the Ritz Cabaret to anyone because the property in question was forfeited to the United States Government on April 10, 2002. However, on May 22, 2002, Defendant Lee entered into a Contract of Sale with Philip Bast Gagne and Dennis Alviani which purported to transfer ownership of the Ritz Cabaret to Gagne and Alviani.

In describing Defendant Lee's representation of his capacity to enter into a binding contract to sell the Ritz Cabaret, Plaintiff Hunt states:

> I, Ron Hunt, of 1200 Golf Course Drive, Mitchellville, Maryland 20721, being duly sworn state the following regarding my experiences with Francis Lee. I initiated communications with Mr. Lee and Joerg Eichelberger, Mr. Lee's agent, concerning the purchase of the Ritz Cabaret and all of it's [sic] licenses in February of

3

> 2002. I had a closed door face to face meeting with Mr. Lee in February 2002. I also met with Mr. Lee and Mr. Eichelberger together approximately three times Between [sic] February 2002 and May 2002. On those occasions I met with Mr. Lee and Mr. Eichelberger at the Ritz Cabaret in Baltimore, and on one occasion I met with Mr. Lee and Mr. Eichelberger at my place of business, the Nexus Gold Club in Washington, D.C. During each meeting we discussed the price, and terms of sale, for the Ritz Cabaret and all of its licenses. Additionally, I submitted my offers in writing to Mr. Lee's agent.
>
> In response to my inquiries concerning the purchase of the Ritz Cabaret and all of it's [sic] licenses, Mr. Lee revealed to me that he had federal criminal legal problems. Mr. Lee stated that the federal government was allowing him to sell the Ritz Cabaret in order to settle his debts. Mr. Stated that if he did not sell it himself, the government would sell it and he would loose [sic] money. Mr. Lee did not disclose the name of who the federal government official who was authorizing him to sell the Ritz Cabaret and all of its licenses. At no time did Mr. Lee or his agent indicate that Mr. Lee was not in a position to enter into a contract for the sale of the Ritz Cabaret. In fact, on May 22, 2002, Mr. Lee entered into a signed Contract of Sale with Philip Bast Gagne and Dennis Alviani, which purported to transfer ownership of the Ritz Cabaret to those named individuals. This contract was even filed with the Baltimore City Liquor Board, for the purpose of commencing the license transfer process. *Exhibit A*, Affidavit of Ron Hunt.

It is crucial to Plaintiff Hunt's case that he be allowed to ascertain the specific government agency which purportedly gave the Defendant permission to sell the Ritz Cabaret in order to settle his debts and the individual who communicated this information to Defendant Lee.

IV.   **DEFENDANT LEE'S FALSE STATEMENTS TO THIRD PARTIES CONCERNING PLAINTIFF RON HUNT CONSTITUTE DEFAMATION UNDER MARYLAND LAW.**

4

Defendant Lee not only discriminated against Plaintiff Hunt contractually, but also defamed Plaintiff Hunt to the employees of the Ritz Cabaret following Plaintiff Hunt's visits to the Defendant's establishment in May of 2002. Defendant Lee stated that "he didn't want to sell the club to Ron because he was too arrogant and he was always throwing his money around," and that Plaintiff Hunt would "treat his girls bad" and that he would also "bring the club down" and "bring in a lower class of clientele." Defendant Lee also stated that Plaintiff Hunt "would never be able to keep the club in the condition that it was in and that Mr. Hunt would not be able to keep the club up and running." Defendant Lee's specific defamatory statements are as follows:

> I, Nicole Fuoco of 365 Montocello Court, Glen Burnie, 21061 being duly sworn state the following regarding my experiences as Bartender at the Ritz Cabaret of Baltimore, Maryland and my knowledge regarding the comments made by Mr. Lee about Ron Hunt. I was a bartender for the Ritz, bartenders are the management, we are responsible for running the club. Before I became a bartender I was a dancer there for two years.
> When I first encountered Ron Hunt, I was working and he tipped me fifty dollars. I did no know who he was at the time. He came into the club two times after that. The second time I saw Ron talking with Mr. Lee about purchasing the club. They were in meetings all day discussing the club. The next time Ron came in he did not meet with Mr. Lee, but he did bring some of his dancers with him.
> After I saw Ron and Mr. Lee discussing the sale of the club, I asked Mr. Lee if he was going to sell the club and he said no. He also said that he didn't want to sell the club to Ron because he was too arrogant and he was always throwing his money around. He kept saying that he did not want Ron changing anything and that Ron wouldn't treat "his family" right. Mr. Lee said that on was cocky and arrogant, and that Ron didn't trust his employees the way that Mr. Lee did. He also said that because Ron was so arrogant, he felt like Ron would "treat his girls bad" and that Ron would bring the club down. But I think that it would be good if Ron took over the club and cleaned it up.

5

> The Ritz is a nasty place to work. I was constantly using hand sanitizers to keep myself clean. I remember when the Health Department came and could have shut the Ritz down. You're not supposed to keep anything in with the ice, but there were always sodas, champagne, and beer in with the ice. The Health Department also cited the Ritz because they could not find a hand washing sink behind the bar because it was covered by a bunch of dirty rags. They probably would have shut the club down, but the y couldn't find the biggest violation. There is a basement in the Ritz, but there is a separate entrance outside on another building. That's where the septic tank is, and it's broken. It's been broken. Whenever you flush a toilet in the club, it goes into the basement. There is knee deep waste in the basement. At one point, Mr. Lee was letting it out onto the street until people started complaining. Even with the septic tank being broken, Mr. Lee still won't hire a professional to fix anything.
>
> The club is not secure either. There is a doorway in the back of the club that doesn't have a door. Not many people know about it, but anyone can hop a few fences and then come into the club through that entrance. I've been robbed before where someone came in through that entrance as well. Junkies have come into the club through that entrance as well. Mr. Lee even had one living in the club and paid him to clean behind the bar. He was a heroine addict and had open sores on his arms and face. Even with the open sores, Mr. Lee let him stock glasses and beer.
>
> A lot of drug dealers frequent the club and a lot of girls do drugs. There was one girl who use [sic] to leave needles around the club, laying on the floors. I also remember when I was running the day shift, I had to fire two girls for prostitution. And it was with the same guy I had previously told the bouncers to watch. The first girl had unprotected sex with the man, in the club, and the other girl gave him oral sex in the club. I fired them both when I found out what took place.
>
> Mr. Lee stated that he wanted Dennis, who is white, to own the club. *Exhibit B*, Affidavit of Nicole Fuoco.

In yet another affidavit, Mr. Lee's defamatory statements concerning Plaintiff Hunt are further detailed:

6

> I, Megan E. Mattson, of 9160 Bourbon Street, Apartment L, Laurel, Maryland 20723 being duly sworn state the following regarding my knowledge of the statements made by Mr. Lee, owner of the Ritz Cabaret located on South Broadway in Baltimore, Maryland, regarding Ron Hunt, owner of the Nexus Gold Club and prospective buyer of the Ritz Cabaret.
> On one particular day in May, 2002, Ron Hunt came to the Ritz Cabaret to discuss the purchase of the club with the owner, Mr. Lee. I did not personally see Mr. Hunt come into the club that night because he had already left by the time that I arrived , but I was made aware of his visit by one of the bartenders who was commenting about how much money she had made on account of Mr. Hunt. The bartender specifically mentioned to me that Mr. Hunt had come into the Ritz Cabaret to talk to Mr. Lee about buying the club.
> After speaking with the bartender, I went to place my name on the dance board. At this moment, I encountered Mr. Lee who was seated near the dance board as usual. I asked him: "Who's gonna buy the club?" He responded: "That cocky, arrogant motherfucker will never get this club." Mr. Lee then continued by stating that Mr. Hunt would never be able to keep the in the condition that it was in and that Mr. Hunt would not be able to keep the club up and running. He said that Mr. Hunt could not keep the club open for a month. He said that the Ritz was an upscale place and that Mr. Hunt was going to bring the club down. He also said that Mr. Hunt would bring a lower class of clientele. I knew that Mr. Lee was referring to Ron Hunt because Mr. Hunt was the only person who had come in to discuss the purchase of the club that particular day. Although I never personally saw any other buyers come into the club, I knew from other employees at the Ritz Cabaret that there were other persons who had come into the club looking to buy it. I have never heard Mr. Lee make comments about any other buyer, besides Mr. Hunt, that has come into the club looking to purchase it. *Exhibit C*, Affidavit of Megan Mattson.

These statements, published to third parties, are in direct contradiction to Plaintiff Hunt's established reputation as a successful businessman and owner of the popular Nexus Gold Club, the largest gentleman's club on the east coast.

## **CONCLUSION**

In filing his Amended Complaint, the Plaintiff has indeed provided this Court and the Defendant with a short and plain statement of his claims and has given the Defendant fair notice of the claims and the grounds for the claims, successfully meeting the standard set by *Conley* and Fed. R. Civ. P. 8.  355 U.S. 41, 47, 78, S.Ct. 99, 103 (1957).

WHEREFORE, for the foregoing reasons, Plaintiff Ron Hunt respectfully requests that this Court deny Defendants' Motion to Dismiss Amended Complaint.

Respectfully submitted,

_____
Jimmy A. Bell, Esq.
Law Office of Jimmy A. Bell, P.C.
9610 Marlboro Pike
Upper Marlboro, MD 20772
(301) 599-7620
(301) 599-7623(fax)
Counsel for Plaintiff
Bar No. 14639

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| **RON HUNT**<br>1200 Golf Course Drive<br>Mitchellville, MD 20721<br><br>　　　　Plaintiff,<br><br>v.<br><br>**TRACEY'S INC. t/a<br>RITZ CABARET**<br><br>and<br><br>**FRANCIS LEE**<br><br>　　　　Defendants. | Civil Action No: L02-CV-2523<br>(WDQ) |

## **ORDER**

Upon consideration of Plaintiff's Opposition to Defendants' Motion to Dismiss Amended Complaint, and in the interests of justice, it is this _____ day of _____, 2003,

ORDERED, that Defendants' Motion to Dismiss Amended Complaint is hereby DENIED.

_____
U.S. DISTRICT COURT JUDGE

9