IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **RON HUNT** | : |
| Plaintiff, | : Civil Action No: L02-CV-2523 <br> : (WDQ) |
| v. | : |
| **TRACEY'S INC. t/a** <br> **RITZ CABARET, et al.** | : |
| Defendants. | : |

## PLAINTIFF RON HUNT'S MOTION FOR LEAVE OF COURT TO DEPOSE DEFENDANT FRANCIS LEE

COMES NOW Plaintiff Ron Hunt, by and through counsel Jimmy A. Bell, Esq. and the Law Office of Jimmy A. Bell, P.C., and respectfully submits this Motion for Leave of Court to Depose Defendant Francis Lee. Plaintiff's arguments will be more fully set forth in the accompanying Memorandum of Points and Authorities.

Respectfully submitted,

_____
Jimmy A. Bell, Esq.
Law Office of Jimmy A. Bell, P.C.
9610 Marlboro Pike
Upper Marlboro, MD 20772
(301) 599-7620
(301) 599-7623 (fax)
Counsel for Plaintiff
Bar No. 14639

Dated: August 26, 2003

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **RON HUNT**             Plaintiff, | Civil Action No: L02-CV-2523 (WDQ) |
| v. | |
| **TRACEY'S INC. t/a RITZ CABARET, et al.**             Defendants. | |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF RON HUNT'S MOTION FOR LEAVE OF COURT TO DEPOSE DEFENDANT FRANCIS LEE

COMES NOW Plaintiff Ron Hunt, by and through counsel Jimmy A. Bell, Esq. and the Law Office of Jimmy A. Bell, P.C., and respectfully submits this Memorandum of Points and Authorities in Support of Plaintiff's Motion for Leave of Court to Depose Defendant Francis Lee.

For cause, Plaintiff Hunt states the following:

### BACKGROUND

On May 19, 2003, Defendant Lee filed a Motion to Dismiss Plaintiff Hunt's Amended Complaint. On June 5, 2003, Plaintiff Hunt filed an Opposition to Defendant Lee's Motion to Dismiss. On July 21, 2003, this Court denied Defendant's Motion to Dismiss Plaintiff Hunt's Amended Complaint without prejudice and ordered "that the parties are to conclude discovery on the issue of Lee's capacity or agency to contract by September 19, 2003." Defendant Lee entered a plea of guilty to conspiracy to commit money laundering, pursuant to 18 U.S.C. § 1956(h), in a separate criminal proceeding

and was sentenced on August 28, 2002. He is now federal prisoner 34633-037, housed in the Federal Correctional Institution in Morgantown, West Virginia.

## ARGUMENT

I.  **STANDARD FOR GRANT OF LEAVE**

Under Fed. R. Civ. P. 30(a)(2), "A party must obtain leave of court, which shall be granted to the extent consistent with the principles stated in Rule 26(b)(2), if the person to be examined is confined in prison." *See also*, *Miller v. Bluff*, 131 F.R.D. 698, 699 (M.D. Pa. 1990)("The deposition of a person confined in prison may be taken only by leave of court on such terms as the court prescribes….This is a recognized exception to the otherwise 'general notion' that leave of court is not required in order to take a party's deposition."); *Charles v. Wade*, 665 F.2d 661, 664 (5th Cir. 1982), *cert. denied*, 460 U.S. 1036 (1983). There was no published binding authority on this Court as to this issue.

II.  **THIS COURT, BY ITS PRIOR ORDER, HAS ALLOWED PLAINTIFF AN OPPORTUNITY TO INQUIRE INTO DEFENDANT LEE'S AGENCY TO CONTRACT ON BEHALF OF THE UNITED STATES GOVERNMENT**

In its Memorandum Opinion of July 21, 2003, this Court stated "[a]t issue in this case is whether Defendant Lee had, as alleged by Plaintiff Hunt, authority from the government to find a buyer for the Ritz Cabaret. As there has been no discovery taken, the court is unable to resolve the issue of agency." Mem. Op. at 2. The very purpose of the deposition sought by Plaintiff Hunt is to further develop the agency relationship between Tracey's, Inc., Defendant Lee, and the federal government. This Court further explained that it would "enter an Order directing parties to conclude discovery on the issue of Defendant Lee's capacity or agency to contract by September 19, 2003 and file

2

dispositive motions by October 17, 2003." *Id*. Finally, this Court ordered "that the parties shall conclude discovery on the issue of Lee's capacity or agency to contract by September 19, 2003 …." Order of 7/21/03.

Defendant Lee served as the agent of Tracey's, Inc., clothed with actual authority to enter into contracts of sale of the Ritz Cabaret. The April 5, 2002 facsimile submitted to Plaintiff Hunt's Counsel from Defendant Lee's realtor/agent, Joerg Eichelberger, provides: "FYI: The seller has the authorization to sell the business and the property, including all of the licenses, we have to submit the offer to the feds for the final approval …." *Exhibit A,* Letter from Eichelberger to Bell dated April 5, 2002. This statement is unambiguous as to Defendant Lee's actual authority, even if Defendant Lee did not own the property. The subsequent communication of May 28, 2002 did nothing to either countermand or contradict the perception and/or reality that Defendant Lee had actual authority to sell the property, providing, in pertinent part, "since the federal government has seized the Ritz …." *Exhibit B,* Letter from Eichelberger to Bell dated May 28, 2002. Further in the letter, Mr. Eichelberger provides, "[t]he way it works is the same as I told you before, any legit contract is forwarded to the Federal Government, they will investigate the person or group to see if these are qualified to purchase the Ritz. No contingencies are accepted especially financing. Its basically like an auction, the best party qualified wins the bid." *Id.* With these representations, it was reasonable to believe 1) that prior to seizure of the Ritz by the United States Government, Mr. Lee had actual authority to sell the Ritz, subject to final approval by the "feds;" and 2) that subsequent to the seizure of the property by the United States Government, Mr. Lee still possessed actual authority to sell the Ritz because "[t]he way it works is the same as [Mr.

*Eichelberger] told [Mr. Hunt] before*, any legit contract is forwarded to the Federal Government, they will investigate the person or group to see if these are qualified to purchase the Ritz." *Id.*

For these reasons, Defendant Lee had actual authority to enter into a contract of sale at all times prior to the sale of this property, irrespective of an actual ownership interest in the Ritz.

**III.   AS THE PERSON WHO ENGAGED IN BUSINESS TRANSACTIONS WHICH ARE THE SUBJECT OF THIS LITIGATION, DEFENDANT LEE IS THE BEST SOURCE OF INFORMATION AS TO HIS BUSINESS TRANSACTIONS WITH PLAINTIFF HUNT.**

Fed. R. Civ. P. 26(b)(2) provides, in pertinent part:

> The frequency or extent of use of the discovery methods otherwise permitted under these rules and by any local rule shall be limited by the court if it determines that:  (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

**A.   <u>The agency discovery sought from Defendant Lee is not obtainable from any other source.</u>**

Fed. R. Civ. P. 26(b)(2)(i) provides, in pertinent part: "The frequency or extent of use of the discovery methods otherwise permitted under these rules and by any local rule shall be limited by the court if it determines that:  (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is

4

more convenient, less burdensome, or less expensive…." The evidence in this case demonstrates that Defendant Lee engaged in numerous transactions with Plaintiff Hunt during which he represented himself to be an agent of the federal government authorized to sell the Ritz Cabaret to the Plaintiff. Thus, while the Defendant may contend that Assistant United States Attorney Marty Clarke and Lynn Briskman of the United States Marshal Service are the best sources of information on whether Defendant Lee was given actual authority by the federal government to enter into a binding contract to sell the Ritz Cabaret, it is clear from the letters received by Plaintiff Hunt from the Defendant's realtor/agent that Defendant represented himself to Plaintiff as an agent of the federal government. For this reason, it is necessary to depose Defendant Lee to ascertain from whom he believed his authority to sell the Ritz Cabaret stemmed.

The words and representations of both Defendant Lee and his agent, Mr. Eichelbeger, plainly suggest that Defendant Lee was given special permission by the Federal Government to sell the Ritz Cabaret. On April 4, 2002, the letter from Plaintiff Hunt's attorney to Mr. Eichelberger stated: "Please be advised that my client has authorized me to make an offer of $1.5 million dollars for the property referenced above." *Exhibit C*, Letter from Bell to Eichelberger dated April 4, 2002. In response to Plaintiff Hunt's offer, Mr. Eichelberger stated:

> Thank you for the offer you made for the Ritz Cabaret yesterday via Fax. The offer was declined by the seller. Like I told you the only reason we [sic] still talking with the prospective buyer's [sic] is, because of the offer that was accepted has a contingency of financing. The seller will entertain other cash offers, of the prospective buyer is willing and able to close the deal within a reasonable time. There is a 6% (Six per cent) buyers fee (Commission) added to the purchasing price. If you and your buyer is

5

> [sic] still interested in negotiating, I would suggest a meeting with you, the buyer and myself.
>
> FYI: The seller has the authorization to sell the business and the property, including all of the Licenses, we have to submit the offer to the Fed's for the final approval, who in turn will release the liens that they have at this time.
> *Exhibit A*, Letter from Eichelberger to Bell dated April 5, 2002.

Mr. Eichelberger's own words lend credence to Plaintiff Hunt's statements that Defendant Lee had been given special permission by the United States government to sell the Ritz Cabaret and justify Plaintiff's request to depose Defendant Lee.

On May 22, 2002, Plaintiff Hunt contacted Mr. Eichelberger via his attorney to request specific information about the Ritz Cabaret to provide to his bank for financing purposes. *See Exhibit D*, Letter from Bell to Eichelberger dated May 22, 2002. In response to this letter, Mr. Eichelberger stated:

> Since the Federal Government has seized the Ritz and all of the records there is nothing that we can provide you with, that would help your client to obtain financing from a bank. The way it works is the same as I told you before, any legit contract is forwarded to the Federal Government, they will investigate the person or group to see if there [sic] are qualified to purchase the Ritz. No contingencies are accepted especially financing. Its basically like a auction, the best party qualified wins the bid. Plus there is a 6% buyer premium added to the purchase price payable to: Joerg Eichelberger/Realtor, Att: Melvin Kodenski, Esq., 19 East Fayette Street, Baltimore, MD. 21202…Since Mr. Lee is temporarily under medical care (2 weeks) and the federal Government is not interested in running the Club, Lee's business partner is managing the Club with our help and 2 Managers. *Exhibit B*, Letter from Eichelberger to Bell dated May 28, 2002.

Again, Mr. Eichelberger's own words lend credence to Plaintiff Hunt's statements that Defendant Lee had been given special permission by the United States government to sell the Ritz Cabaret and justify Plaintiff's request to depose Defendant Lee.

On June 7, 2002, Plaintiff Hunt made another offer to Defendant Lee for the purchase of the Ritz Cabaret. The letter detailing this offer stated: "Please be advised that my client has authorized me to make an offer of $1.6 million dollars for the Ritz Cabaret located at 504 South Broadway in Baltimore, Maryland." *Exhibit E*, Letter from Bell to Eichelberger dated June 7, 2002. In response to this letter, Mr. Eichelberger stated:

> The feds approved the management group the [sic] Lee was dealing with over the last few month's [sic], as you can see in this mornings Sun Paper, Maryland section page 5B, they advertise the transfer of the Liquor License on 504 S. Broadway.
>
> Since we never know that any deal goes thru, until the check clears, I will forward your clients offer, but first you have to make a change. I informed you before, any offer that's made you have to add a Six per cent (6%) buyers premium. Please make you [sic] change and fax it to me and send a hard copy to me by mail. *Exhibit F*, Letter from Eichelberger to Bell dated June 8, 2002.

**B. Plaintiff, by this Court's Order, has an opportunity to depose Defendant Lee, an opportunity which has not yet lapsed.**

Fed. R. Civ. P. 26(b)(2)(ii) provides, in pertinent part:

> The frequency or extent of use of the discovery methods otherwise permitted under these rules and by any local rule shall be limited by the court if it determines that: … (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought…

Pursuant to the terms of the Order entered by this Court, "the parties shall

7

conclude discovery on the issue of Lee's capacity or agency to contract by September 19, 2003 …." Order of 7/21/03. This Order was issued at the end of the preceding month. The purpose of this Motion is to further inquire into the parties' agency relationship. Plaintiff files with the Court a separate motion to enlarge the discovery period, to foster the timely deposition of Mr. Lee. Pl.'s Mot. to Enlarge 8/26/03. For these reasons, it cannot be said that Plaintiff "has had ample opportunity by discovery in the action to obtain the information sought," sufficient to foreclose his ability to depose Defendant Lee.

### C.  The burden or expense of the proposed discovery is nominal.

Fed. R. Civ. P. 26(b)(2)(iii) provides, in pertinent part:

> The frequency or extent of use of the discovery methods otherwise permitted under these rules and by any local rule shall be limited by the court if it determines that: … (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.…"

As set forth in Section III.A. of this Memorandum, the words and representations of both Defendant Lee and his agent, Mr. Eichelberger, plainly suggest that Defendant Lee was given special permission by the Federal Government to sell the Ritz Cabaret. A series of meetings and exchanges indicated that Defendant Lee was authorized by the United States Government to sell the property. Moreover, the property was actually sold as a result of a personal transaction with Defendant Lee. Defendant Lee's deposition will foster Plaintiff's proof of an issue central to this case and central to this Court's Order of

8

July 21, 2003, the issue of Defendant Lee's agency relationship with the United States Government.

In light of the significance of Defendant Lee as the person with authority to enter into sales transactions and as the person who facilitated the final sale in this action, the benefits of his testimony outweigh the nominal costs that result from his deposition. Defendant Lee is incarcerated in the Federal Correctional Institution in Morgantown, West Virginia. Plaintiff Hunt intends to travel to the FCI-Morgantown to conduct the deposition, on-site. The only necessary expense incurred by FCI-Morgantown will be the expense of making Defendant Lee available for deposition at FCI-Morgantown. FCI-Morgantown has indicated that its procedure is to conduct background investigations of all persons entering the facility for depositions, including counsel and court reporters. Therefore, to the extent that FCI-Morgantown conducts its own investigations, there is an added expense.

Although not binding authority for this Court,[*] a federal court has discussed the pertinent inquiry as to the expense of a 30(a)(2) deposition. In *Miller v. Bluff*, a defendant in an action sought to depose the plaintiff, who was then imprisoned in a correctional facility. 131 F.R.D. 698 (M.D. Pa. 1990). The court explained: "[a]t the time defendant is granted leave of court to take the deposition of the incarcerated plaintiff, he shall be directed to make all necessary arrangements with state prison officials and bear any expenses incidental thereto." *Id.* at 700. The court's decision makes clear that the burden to bear expenses incidental to the deposition shall be placed squarely upon the shoulders of the party seeking the deposition. Accordingly, Plaintiff

---

[*] There was no published binding authority on this Court as to this issue.

9

files this Motion aware that he will bear expenses incurred to FCI-Morgantown and Plaintiff is willing to accept these costs, which are few.  Plaintiff Hunt is also prepared to make all necessary arrangements with FCI-Morgantown officials.

Counsel for the Defendant, Brenda Grantland, has previously stated that she opposes this Motion now being filed by the Plaintiff.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, Plaintiff Hunt requests that this Honorable Court grant Plaintiff's Motion for Leave of Court to Depose Defendant Francis Lee.

Respectfully submitted,

_____
Jimmy A. Bell, Esq.
Law Office of Jimmy A. Bell, P.C.
9610 Marlboro Pike
Upper Marlboro, MD 20772
(301) 599-7620
(301) 599-7623 (fax)
Counsel for Plaintiff
Bar No. 14639

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| **RON HUNT** : | |
| : | Civil Action No: L02-CV-2523 |
| Plaintiff, : | (WDQ) |
| : | |
| v. : | |
| : | |
| **TRACEY'S INC. t/a** : | |
| **RITZ CABARET, et al.** : | |
| : | |
| Defendants. : | |

## **ORDER**

Upon consideration of Plaintiff's Motion for Leave of Court to Depose Defendant Francis Lee, any opposition thereto, and in the interests of justice, it is this _____ day of _____, 2003,

ORDERED, that Plaintiff's Motion for Leave of Court to Depose Defendant Francis Lee is hereby GRANTED.

_____
WILLIAM D. QUARLES, JR
United States District Judge

11