```
 1           IN THE UNITED STATES DISTRICT COURT
 2              FOR THE DISTRICT OF MARYLAND
 3   RON HUNT,                :
 4            Plaintiff       :
 5   v                        :   CIVIL ACTION NO.
 6   TRACEY'S INC., t/a       :   1:02-CV-2523
 7   RITZ CABARET, et al.     :
 8            Defendants      :
 9
10                       *   *   *
11              Deposition of FRANCIS LEE
12            Wednesday, November 19, 2003
13                       *   *   *
14   a witness herein, taken on behalf of the Plaintiff
15   in the above-entitled cause of action pursuant to
16   notice and the Maryland Rules of Civil Procedure,
17   by and before Monique Christiansen, Notary Public
18   within and for the State of West Virginia, at the
19   Federal Correctional Institution, 446 Greenbag
20   Road, Morgantown, West Virginia, 26505, commencing
21   at 2:45 p.m.
22
23
24
```



Wheeling, WV                                               304-232-9292

Pittsburgh, PA
Morgantown, WV        STRESKI REPORTING                    1-800-659-2249
Steubenville, OH         & VIDEO SERVICE                   FAX 304-232-9375

```
 1    APPEARANCES:
 2
 3                    On behalf of the Plaintiff:
 4              JIMMY A. BELL, Esquire
 5    Law Office of Jimmy A. Bell, PC, 9610 Marlboro
 6    Pike, Upper Marlboro, Maryland, 20772
 7                 Telephone: 301-599-7620
 8                 FAX: 301-599-7623
 9              E-Mail: jimbellesq@aol.com
10
11
12                    On behalf of Francis Lee
13    appearing telephonically:
14              BRENDA GRANTLAND, Esquire
15    Law Office of Brenda Grantland, 265 Miller Avenue,
16    Mill Valley, California, 94941
17                 Telephone: 415-380-9108
18                 FAX: 415-381-6105
19              E-Mail: bgrantland1@comcast.net
20
21
22
23
24
```

Page 3

```
 1              . . . . . . . . . . . . . . . . . . . I N D E X . . . . . . . . . . . . . . . . . . . .
 2      WITNESS. . . . . . . . . . . . . .EXAMINATION BY. . . . . . . .PAGE
 3      Mr. Lee. . . . . . . . . . . . .Mr. Bell. . . . . . . . . . . . . . . .4
 4      Mr. Lee. . . . . . . . . . . . .Ms. Grantland. . . . . . . . . .42
 5
 6
 7              . . . . . . . . . . . . . . . . . . .E X H I B I T S. . . . . . . . . . . . . .
 8      Lee Deposition Exhibit No. 1. . . . . . . . . . . . . . .10
 9      Lee Deposition Exhibit No. 2. . . . . . . . . . . . . . .11
10      Lee Deposition Exhibit No. 3. . . . . . . . . . . . . . .23
11      Lee Deposition Exhibit No. 4. . . . . . . . . . . . . . .25
12      Lee Deposition Exhibit No. 5. . . . . . . . . . . . . . .26
```

13
14
15
16
17
18
19
20
21
22
23
24

Page 7

1  A.          Any time, what?  Say again.
2  Q.          At any time in your life, did you ever
3  make a discussion with Mr. Hunt regarding selling
4  The Ritz Strip Club to Mr. Hunt?
5  A.          He came to the club one time to ask me
6  to sell it, but I remind him that, at that time,
7  that I didn't own it.  How can I sell when I
8  didn't own it?
9  Q.          Did you own the club in February?
10 A.          No.  The government seized it before
11 that.
12 Q.          When did--
13 A.          When arrest me, they seized the club.
14 Q.          Do you remember when the government
15 arrested you?
16 A.          Yes.  That was the day they seized my
17 club.  After that day, I didn't own it since.  On
18 the title is my name, but the U.S. government own
19 it.
20 Q.          Who is George Eichenberger?
21 A.          George Eichenberger, he's a real
22 estate agent.
23 Q.          And he was your real estate agent?
24 A.          He not my real estate agent.  He the

```
 1    club any other time talking to you?
 2    A.          No.  Only one time went from office to
 3    go downstairs and we sit at the bar.  That's all.
 4    That's the only one time, and I went to see him at
 5    his club second time, and he came to my bar and
 6    wasn't around.
 7                 MR. BELL:  Ms. Grantland, I'm
 8    not for sure how we're going to do this part.
 9    I'll just read you what it is, because I have some
10    documents. I'll just read what they state.
11                 MS. GRANTLAND:  You should
12    have faxed those over to me.
13                 MR. BELL:  No.  You should
14    have-- actually, I'm not required to do that under
15    the Rules, so I can read them into the record.
16                 It's dated April 4, 2002, to
17    George Eichenberger.  It states, "Dear Mr.
18    Eichenberger, please be advised that my client has
19    authorized me to make an offer of $1.5 million for
20    the property referenced above, Ritz Cabaret, 504
21    South Broadway, Baltimore, Maryland, 21231."  It's
22    dated April 4th, 2002.
23                 Ms. Grantland, can I show this to your
24    client?
```

1                    MS. GRANTLAND: Yeah. Go
2    ahead. Could you hold on a second? I'll be right
3    back.
4                    MR. BELL: Sure.
5                    THE WITNESS: I never see any
6    paper, so I don't know.
7    BY MR. BELL:
8    Q.        You've never seen this document?
9    **A.        I never see document from Mr.**
10   **Eichenberger, from Mr. Ron at all.**
11                   MR. BELL: I want to mark this
12   as Deposition Exhibit No. 1.
13                   * * *
14                   (Whereupon, Lee Exhibit No. 1
15   was marked for identification purposes.)
16                   * * *
17                   MR. BELL: This is going to be
18   marked as Deposition Exhibit No. 2. It's a letter
19   from George Eichenberger dated 4-5-2002 to me. It
20   says, "Thank you for your offer made for The Ritz
21   Cabaret yesterday via fax. The offer was declined
22   by the seller. Like I told you, the only reason
23   we're still talking to prospective buyers is
24   because of the offer that was accepted has a

Page 12

1   here-- the contract right here, I never discuss
2   commission with my real estate agent. I don't
3   know how he come up with that idea that he get
4   commission from the buyer. I never discuss with
5   him commission, and I don't have a contract, the
6   letter intended for Mr. Ron and nobody else, at
7   that time, but he never mention about Mr. Ron
8   offer me any, any contract. I don't know nothing
9   about this.
10  BY MR. BELL:
11  Q.          Was he your agent?
12  A.          He just want to sell whenever I own
13  it, but it doesn't mean that he's my agent. He
14  just want to sell.
15  Q.          Isn't it a fact that--
16  A.          That he know that you know that I
17  didn't own the club, and he know that I didn't own
18  the club.
19  Q.          When didn't you own the club?
20  A.          The government arrest me for, that's
21  the day that my lawyer, Mr. Chuck, Mr. Chuck
22  Bernstein told me, "You cannot sell the club. You
23  didn't own the club no more," when he arrest me,
24  and I had to be swear in the court that you didn't

Page 15

1  A.          What agency?  The way I understand it,
2  the government seizes it.  That's what they seize,
3  my club.  That's what Chuck Bernstein told me
4  that, "You didn't own the club from now on."  Then
5  from there, that day until when they arrest me and
6  say-- they say-- I got the name and the title, but
7  I didn't own the club.  That what he told me, so I
8  didn't sell it.
9  Q.          You continued to run the club, didn't
10 you?
11 A.          I still run the club until I plead
12 guilty and the government take it from there, but
13 I'm still fighting for forfeiture.
14 Q.          Now, you said that when you were found
15 guilty.
16             Do you remember when you were found
17 guilty?
18 A.          I think May 23rd of 2002.
19 Q.          Let me ask you some foundational
20 questions, because it's going to be helpful to me.
21             What's your education level?
22 A.          Finish high school.
23 Q.          Finished high school.
24             Did you have any training after high

1                   MS. GRANTLAND:  I have some
2    follow-up questions.
3                       *   *   *
4                   E X A M I N A T I O N
5    BY MS. GRANTLAND:
6    Q.              Mr. Lee, do you know the difference
7    between a contract and an offer?
8    A.              No.
9    Q.              Were these contracts or offers that
10   you got from the-- from-- I can't think of the--
11   Phillip Gabne or Mr. Dennis, were those binding on
12   the government?
13   A.              Yes.
14   Q.              Yes?
15   A.              Say again.  I don't understand.
16   Q.              Do you know what "binding" means?
17   A.              What's that mean?  Explain.
18   Q.              Let me see if I can ask you a
19   question--
20                   What effect did those contracts or
21   offers that you got have on the government?
22   A.              The contract I took from Mr. Dennis?
23   Q.              Uh-huh.
24   A.              I don't know.  It's a piece of paper

Page 43

1   and I sign it.

2               MS. GRANTLAND: Okay. I don't
3   have any other questions.

4               MR. BELL: His rights, do you
5   want me to do it on or off the record? His rights
6   to waive or to sign it.

7               MS. GRANTLAND: Let me just
8   tell you that we do not waive signature because
9   he's so hard to understand. We want to make sure
10  that he can look those over, because he may have
11  been misinterpreted or misunderstood.

12              MR. BELL: You have a right to
13  read the transcript. The only thing that you
14  can-- you can't add to it. The only think you can
15  do is if she misspells a word or if there are
16  typographical errors, you can change that.

17              Your attorney has stated for the
18  record that you are going to go ahead and read.

19              THE WITNESS: Yeah. I would
20  like to read and know and understand that when you
21  talk, you know, the pronunciation sometimes. I
22  can look in dictionary.

23              MR. BELL: Thank you, Mr. Lee.
24              THE WITNESS: Thank you, sir.