IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RON HUNT | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 02-CV-2523 |
| v. | ) | |
| | ) | |
| TRACEY'S INC., t/a/ RITZ CABARET | ) | |
| | ) | |
| and | ) | |
| | ) | |
| FRANCIS LEE | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
PETITION FOR ATTORNEYS' FEES**

Defendant, through undersigned counsel, hereby files this Memorandum in Support of Defendant's Petition for Attorneys' Fees, and states as follows:

**STATEMENT OF FACTS**

1.  Plaintiff filed this civil action alleging claims under 42 U.S.C. §§ 1981 and 1982, with a state law claim for defamation. He sought judgment in the amount of ten million dollars.

2.  Defendant filed a Motion to Dismiss, arguing that Plaintiff's federal claims under §§ 1981 and 1982 fail because Defendant did not own the property at the time, and therefore, as a matter of law, he could not commit a constitutional tort by refusing to sell it to Plaintiff. Defendant argued that Plaintiff's state law defamation claim also failed to state a claim because the alleged statements were not statements of fact capable of being defamatory.

3.  On July 21, 2003, the Court denied the motion to dismiss without prejudice, allowing limited discovery on the issue of whether Francis Lee was authorized to act as an agent of the federal government in the sale of the forfeited club, and advised the parties that it would decline supplemental jurisdiction over the state tort claims if the federal claims failed.

4.  After being given several extensions of time, Plaintiff limited discovery to the deposition of Francis Lee, in prison. Later, after discovery closed, Plaintiff requested more time in order to depose another inmate, but never did Plaintiff even attempt to obtain discovery from a federal official who could authoritatively state whether or not Lee was delegated such authority.  Defendant had already submitted declarations from the two government agents in charge – the federal prosecutor and the employee of the U.S. Marshal Service – stating that the federal government had not authorized Lee to sell the Ritz Cabaret on its behalf.

5.  During Lee's deposition, Plaintiff's attorney did not even ask him whether he was authorized to act as an agent of the federal government, but instead pursued other, irrelevant lines of questioning.

6.  After Lee's deposition, Plaintiff sought to extend discovery again so that he could depose another inmate.  In the Amended Joint Status Report (Document No.: 55), filed on March 19, 2004, Plaintiff's counsel falsely stated that Lee had admitted

during his deposition that he was authorized to act as an agent of the federal government in the sale of the Ritz Cabaret, and that inmate Jeorg Eichelberger would know the name of the federal agent who so authorized him.  The transcript of the Defendant Lee's Deposition (Attachment #1 to Defendant's Memorandum of Points and Authorities in Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment [Document No. 63]  filed on April 19, 2004), shows this statement by Attorney Jimmy Bell was  false.

7.  The relative financial positions between the Plaintiff and Defendant here are the reverse of the usual civil rights case scenario.  In his pleadings Plaintiff brags about his financial success as the owner of the largest gentleman's club on the East Coast.  Defendant, on the other hand, has lost almost everything he owned during the course of the criminal proceedings against him in federal court, and his attorneys fees in this case have consumed a substantial portion of his remaining assets.

**ARGUMENT**

I.  **The standard to be applied in awarding attorneys fees to a prevailing Defendant**

The Civil Rights Attorney's Fees Awards Act of 1976, Pub. L. 94-559, 90 Stat. 2641, as set forth in 42 U. S. C. § 1988 states:  ". . . In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title,... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." The section states that the court "in its discretion" may allow a fee, but that discretion is not without limit: *the prevailing party "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Newman v. Piggie Park*

3

> *Enterprises, Inc.*, 390 U.S. 400, 402 (1968); *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).

*Blanchard v. Bergeron*, 489 U.S. 87, 89 n. 1 (1989) (emphasis added).

Although the statute seems to apply equally to prevailing Defendants as prevailing Plaintiffs, the Supreme Court has held that, under § 1988,

> a prevailing Defendant may recover an attorney's fee only where the suit was vexatious, frivolous, or brought to harass or embarrass the Defendant. See H. R. Rep. No. 94-1558, p. 7 (1976); *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978) ("[A] district court may in its discretion award attorney's fees to a prevailing Defendant in a Title VII case upon a finding that the Plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith").

*Hensley v. Eckerhart*, 461 U.S. 424, 429 n. 2 (1983). The Supreme Court applied the *Christiansburg* standard to § 1983 actions in *Hughes v. Rowe*, 449 U.S. 5 (1980).

In *Christiansburg*, the Supreme Court adopted the reasoning of two appellate courts, one holding that the court is justified in refusing to award attorneys fees to prevailing Defendants in Title VII actions unless Plaintiff's action was "unfounded, meritless, frivolous or vexatiously brought" and the other "stat[ing] that such awards should be permitted 'not routinely, not simply because he succeeds, but only where the action brought is found to be unreasonable, frivolous, meritless or vexatious.'" 434 U.S. at 421. The Court added:

> We would qualify their words only by pointing out that the term "meritless" is to be understood as meaning

groundless or without foundation, rather than simply that the Plaintiff has ultimately lost his case, and that the term "vexatious" in no way implies that the Plaintiff's subjective bad faith is a necessary prerequisite to a fee award against him.  In sum,  a district court may in its discretion  award  attorney's  fees  to  a  prevailing Defendant  in  a  Title  VII  case  upon  a  finding  that  the Plaintiff's  action  was  frivolous,  unreasonable,  or without foundation, even though not brought in subjective bad faith.

*     *     *

... [A] Plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous,  unreasonable,  or  groundless,  or  that  the Plaintiff continued to litigate after it clearly became so.  And, needless to say, if a Plaintiff is found to have brought or continued such a claim in bad faith, there will be an even stronger basis for charging him with the attorney's fees incurred by the defense.

434 U.S. at 421-22.

**A.    Plaintiff should have known his case was frivolous before and after he filed suit**

As Defendant showed in his Rule 12(b)(6) motion to dismiss, Plaintiff's civil rights suit was "meritless" – that is, groundless and without foundation – as he and his counsel knew or should have known this fact before they filed suit.

**1.    Plaintiff filed suit without any evidence to support two elements of the federal causes of action**

Though Plaintiff admittedly knew the facts that Defendant had been convicted on federal criminal charges, and that the property had been forfeited, he persisted in filing this civil rights action claiming Lee refused to sell the property to Hunt.  The most cursory investigation and legal research, if not mere common sense, would inform him that the Defendant did not own the property – a

5

necessary element of each of the federal causes of action. Furthermore, the Eichelberger letters which Plaintiff submitted as his evidence clearly informed Plaintiff that the property had been forfeited, and that the federal government was now the owner of the property and would be making the decision. If the letters left any ambiguity in his mind, Plaintiff should have done some research, or contacted the U.S. Attorney's Office or U.S. Marshal Service to inquire about the legal effect of the forfeiture. Instead he chose to remain deliberately ignorant of the legal ramifications of the forfeiture.

Plaintiff also was missing the crucial element of racial discrimination. Nowhere in any of the evidence Plaintiff has submitted – nor even in his bare allegations – is there any indication that any of Defendant's alleged actions were motivated by racial animus. Instead, the facts alleged by Plaintiff suggest that if the Defendant had any reason to dislike Plaintiff and not want him to get the Ritz Cabaret, it was because he believed Hunt was "arrogant" and "cocky" and that he would not treat Lee's employees right. Plaintiff apparently assumed that the allegation that the property was sold to a white man was enough to show a racially discriminatory motive.[1]

---

[1] See *Bond v. Keck*, 629 F.Supp. at 227 ("Plaintiffs were unable to produce any evidence of discrimination or retaliatory conduct on the part of Defendants. Plaintiffs' evidence consisted solely of the simple statistical fact that the math class to which Angela Bond was transferred, consisted of considerably more blacks than whites.")

### 2.    Plaintiff filed suit without adequate research, and continued to submit faulty legal arguments

Without conducting the legal research any prudent attorney would pursue before filing suit, Plaintiff and his counsel recklessly plowed ahead, failing to see that their evidence was fatally defective on those two elements.

Throughout the litigation, Plaintiff has continued to make legal arguments without adequately researching them.  For example, when Defendant pointed out in his Motion to Dismiss that the complaint was defective for failing to state the jurisdictional basis for the action, Plaintiff replied that his basis was both federal question and diversity, arguing diversity was established by the fact that Defendant was imprisoned in West Virginia.  This forced Defendant's attorney to do the research – which Plaintiff should have done as a preliminary matter – to establish that the domicile of an inmate is his domicile before being incarcerated.  Both parties were Maryland residents, destroying diversity.  See Defendant's Reply to Plaintiff's Amended Opposition to Defendant's Motion to Dismiss the Amended Complaint, p. 2 (Document No. 32, filed July 17, 2003).

Plaintiff also repeatedly cited cases which were not on point, or which actually supported Defendant's arguments, and then mischaracterized their holdings.  See generally Reply to Plaintiff's Opposition to Motion to Dismiss, pp. 11-13.  All of this multiplied the amount of work Defendant's attorneys had to do

– to defend against frivolous arguments which Plaintiff should not have made in the first place.

### 3. Plaintiff continued litigating after it became clear his case was frivolous

Not only was Plaintiff's claim "frivolous, unreasonable, and groundless" from the outset, but he "continued to litigate after it clearly became so." *Christiansburg*, 434 U.S. at 422.

The order denying Defendant's Motion to Dismiss left Plaintiff's case hanging by one slim thread – the unlikely possibility that the federal government had authorized Lee to sell the property on its behalf. The Court allowed "limited discovery" on the issue of whether Lee was authorized by the government to act as its agent, and advised the parties it would decline supplemental jurisdiction over the state law defamation claims. Plaintiff continued to press ahead, heedless of the court's warnings.

After Plaintiff delayed in requesting discovery and obtained several extensions, the only discovery he ever obtained was the deposition in prison of Francis Lee. If Plaintiff were in good faith trying to ascertain whether Lee was authorized to act as an agent of the federal government – the only issue left open after the ruling on Defendant's Motion to Dismiss – he certainly would have deposed the government agents in charge of the forfeiture case, Assistant U.S. Attorney Martin Clarke and Marshal Service employee Leonard Briskman. Plaintiff made no attempt to depose them. He served no interrogatories or documents requests, and no subpoenas on the federal government.

### 4.    Plaintiff's    actions    needlessly    multiplied Defendant's attorneys fees

After obtaining a court order to take Francis Lee's deposition, Plaintiff continued to needlessly multiply the Defendant's attorneys fees.  Plaintiff's lawyer failed to attend the first deposition of Francis Lee, leaving the prison personnel, Lee and Ms. Grantland waiting for an hour before they determined that Mr. Bell had canceled the deposition; the deposition was rescheduled,  At the deposition of Lee, Mr. Bell never asked Lee the crucial question "were you authorized to act as an agent of the federal government in selling the Ritz Cabaret?"  Instead, he asked him questions that were irrelevant to the issues remaining in the case: what other property or businesses Lee owned, questions about Jeorg Eichelberger's letters, and questions about the alleged defamatory statements, for which the Court had already ruled it would not exercise supplemental jurisdiction if the federal cause of action failed.

### B.    Defendant should be awarded attorney's fees against Plaintiff under § 1988

The purpose of attorneys fees awards in favor of Defendants in civil rights litigation is to deter the filing and litigation of frivolous or groundless civil rights suits.  *Bond v. Keck*, 629 F.Supp. 225, aff'd without opinion, 802 F.2d 463 (8th Cir. 1986).  The Plaintiff not only did not have a cause of action because of the Defendant's lack of ownership of the subject property, but

also, he failed to even allege any fact which would support a claim of racial animus by Francis Lee.

Here, as in *Bond v. Keck*,

Defendant[] ha[s] been forced to defend a lawsuit that was groundless from the beginning. Moreover, the [Defendant is] not the only victim[] in this case. "The entire public inevitably suffers when a vindictive Plaintiff squanders limited judicial resources by prosecuting frivolous lawsuits." *American Family Life Assurance Co. v. Teasdale*, 733 F.2d 559, 570 (8th Cir. 1984).

629 F.Supp. at 227.

Although the groundless litigation appears to be primarily the fault of Plaintiff's lawyer, rather than Plaintiff himself, Plaintiff chose this attorney, and he is legally responsible for his attorney's actions and should shoulder the financial burden of Defendant's legal fees. See *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-34 (1962); *Prate v. Freedman*, 583 F.2d 42, 48 (2nd Cir. 1978).

For these reasons, Defendant should be awarded attorneys fees under 42 U.S.C. § 1988.

## II. Some part of the fees should be paid by Plaintiff's attorney to deter him from stirring up more frivolous litigation in the future

Plaintiff's lawyer, Jimmy A. Bell, shares the blame for pursuing this litigation with no valid basis in fact or law. If this were the first frivolous case which Bell had ever filed, or continued to pursue after learning of the deficiencies of his case, one might expect that the mere loss of the case would cause him to be more careful in the future. However an investigation of Mr.

10

Bell's background shows a pattern of similar abuses in all of his reported cases.

To make matters worse, Bell holds himself out to be a prominent civil rights lawyer. On his website Bell proclaims:

> Attorney Bell has swiftly become one of the nations leading Civil Rights and Entertainment attorneys. The charismatic lawyer has already begun to teach this generation how to continue the fight that so many of our parents, grandparents and great-grand parents fought.

See http://www.jimbellesq.com/2002/Bio/bio-7-02.htm.

Bell's reported federal cases on Lexis do not paint such a rosy picture of him. The Lexis' federal database contains six reported cases in which Jimmy A. Bell is listed as attorney of record for Plaintiff. *Brown v. Dorsey & Whitney*, 267 F.Supp.2d 61 (D.D.C. 2003) was dismissed because the Plaintiff's employment contract required binding arbitration. *Berry v. Soul Circus, Inc.*, 189 F.Supp.2d 290 (D.Md. 2002) was transferred to the Northern District of Georgia because of a forum selection clause in Plaintiff's employment contract. Pacer records show that after the transfer to Georgia, the court struck Jimmy Bell's appearance as counsel for failure to comply with the local rules, and the action was later dismissed with prejudice by Plaintiff.

In *Lynch v. West Group*, 2003 U.S. Dist. Lexis 20709 (2003), Pacer records show that the Plaintiff named and served the wrong Defendant, obtained an entry of default against the wrong Defendant, then failed to serve the correct Defendant within 120 days. The case was dismissed without prejudice.

11

In *Brown v. District of Columbia*, 251 F.Supp.2d 152 (D.D.C. 2003) the court granted a motion for summary judgment in favor of Defendant on all causes of action.  The published opinion shows a myriad of defects in Plaintiff's pleadings.  See Id. at 163-64.  As in this case, the Plaintiff failed to allege any facts to support her allegation that Defendant and its agents conspired against her motivated by discriminatory animus.

In *Martin v. Mendoza*, 230 F.Supp.2d 665 (D.Md. 2002) the court granted summary judgment for Defendant.  Among the defects in Plaintiff's case noted in the published opinion are: Plaintiff did not have diversity jurisdiction, 230 F.Supp.2d at 667 n.2; the facts alleged did not show a Fourth Amendment violation, especially given the qualified immunity doctrine, Id. at 670-71; and Plaintiff failed to support the claims for excessive force and Equal Protection violations.  ("[T]here is not a scintilla of evidence in the record to support an excessive force claim.") Id. at 671. ("Apart from Martin's own subjective belief, however, there is no evidence whatsoever in the record to support [the Equal Protection] claim.") Id. at 672.

*Saunders v. Baltimore County*, 163 F.Supp.2d 564 (D.Md. 2001) was dismissed for failure to state a claim upon which relief could be granted. ("The Plaintiff does not demonstrate either that he was actually disabled under the ADA, or that his employer, Baltimore County, regards him as disabled.") Id. at 567.

12

These cases "indicate a pattern of knowingly bringing groundless actions," *Hepperle v. Panama Machinery & Supply Co.*, 532 F. Supp. 1085, 1086 (N.D. Fla. 1982) (holding a pro se Plaintiff liable for his adversary's attorney's fees for doing so.)  The court records on Pacer, as well as the reported opinions in those cases also show that Mr. Bell habitually continues litigating after the deficiencies of his cases are pointed out.  Such reckless litigation by an attorney should be discouraged with sanctions to prevent a continuation of the misconduct.

In *Debauche v. Trani*, 191 F.3d 499, 511 (4th Cir. 1999), the court of appeals authorized the splitting of attorneys fees award between the Plaintiff and the Plaintiff's attorney when both the Plaintiff and his lawyer are at fault for pursuing frivolous litigation. In that case the court awarded fees against Plaintiff herself under § 1988. The Fourth Circuit held that a court may enter a fee award against Plaintiff's lawyer under Rule 11 for filing a frivolous complaint, and for filing

> pleadings that contain "claims or other legal contentions [that] are [not] warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law," or factual allegations that have neither evidentiary support nor the likelihood of forthcoming evidentiary support. Fed. R. Civ. P. 11(b)(2), (b)(3), (c).

191 F.3d at 512.  Additionally, pursuant to 28 U.S.C. § 1927 the court may require a Plaintiff's lawyer to pay the portion of the Defendant's legal fees incurred when the Plaintiff's lawyer

"multiples the proceedings... unreasonably and vexatiously." 191 F.3d at 511.

## A.    Rule 11 violations

As Defendant has shown in his Motion to Dismiss and Motion for Summary Judgment, Plaintiff's federal causes of action were defective on two grounds – (1) Plaintiff could not prove a violation of either § 1981 or § 1982 because Defendant did not own the subject property at the relevant time; and (2) Plaintiff had no evidence of racial animus. Although Defendant believed the complaint to be lacking in factual support from the time it was filed, it was not until summary judgment exposed all of Plaintiff's evidence that Defendant could show conclusively that Plaintiff filed his complaint knowing he lacked sufficient factual support.

> While a lawyer may rely on discovery to reveal *additional* facts to support claims which are well grounded in fact, Rule 11 sanctions are appropriate when a lawyer attempts to use discovery to support outrageous and frivolous claims for which there is *no* factual support. Unsubstantiated claims such as these constitute an abuse of the judicial process for which Rule 11 sanctions were designed.

*In re Kunstler*, 914 F.2d 505, 515 (4th Cir. 1990). Here, as in *Kunstler*, Plaintiff appears "to have relied entirely upon discovery in the hope of finding some factual support for many of [his] claims." *Id.* Under Rule 11,

> the factual inquiry necessary to file a complaint is generally satisfied if all of the information which can be obtained prior to suit supports the allegations made, even though *further* facts must be obtained through discovery to finally prove the claim. However, a complaint containing allegations unsupported by *any* information obtained prior to filing, or allegations

14

based on information which minimal factual inquiry would disprove, will subject the author to sanctions.

914 F.2d at 516. Therefore, Plaintiff's counsel should be ordered to show cause why sanctions should not be imposed upon him for violating this rule.

Furthermore, Plaintiff's state law defamation claim was not well grounded in law, as Defendant showed in his Motion to Dismiss and Reply to Opposition to Motion to Dismiss. Although this Court declined to exercise supplemental jurisdiction over the state tort claims, Defendant was required to fully research and brief the legal deficiencies of that claim. Again Plaintiff's counsel should be ordered to show cause why he filed a complaint including the state defamation claim without having a sufficient legal foundation. See *Kunstler*, 914 F.2d at 516-17.

**B.    Fees under § 1927**

Title 28 U.S.C. § 1927 and the law of this Circuit allows an attorney to be assessed fees of his opponent attributable to his actions in multiplying the proceedings unreasonably and vexatiously.

Plaintiff's counsel's actions in discovery and in response to the Court's Order on Defendant's Rule 12(b) motion unreasonably and vexatiously multiplied the proceedings. This Court denied Defendant's motion to dismiss without prejudice, leaving open only the possibility that Lee might have been acting as an agent of the federal government with regard to the sale of the Ritz Cabaret. The court permitted discovery confined to that narrow issue, and

advised the parties that it would decline to exercise supplemental jurisdiction over the state claims if the federal claim was dismissed.

Plaintiff's attorney's response to this order was to request only the deposition of Francis Lee, in prison.  Defendant's counsel gave Plaintiff the names of the two federal agents in charge of the forfeiture of the property, and even gave him declarations from both of them.  Both AUSA Martin Clarke and Marshal Service employee Leonard Briskman stated their willingness to be deposed.  Plaintiff's counsel did not even attempt any discovery from any federal agents.  Instead he insisted on deposing Lee in prison, requiring litigated motions over that issue.  After receiving an order allowing the deposition, the prison agreed to accommodate Defendant's counsel by installing a special phone line so that Ms. Grantland could attend the deposition telephonically.  After all of that trouble, Mr. Bell failed to appear at the first deposition and the deposition had to be rescheduled.  Discovery had to be extended yet again, and summary judgment deadlines postponed.  The prison had to reinstall the phone line.

During Lee's deposition, attorney Bell ignored the Court's warning about the narrow scope of discovery, and instead asked Lee questions dealing with Eichelberger and his  letters, other property Lee owned, and matters dealing with the state defamation counts for which the Court had already advised it would not retain supplemental jurisdiction if the federal claims did not survive.

16

After all of the irrelevant questioning in Lee's deposition, attorney Bell neglected to ask him the one question which this court had left open for discovery – whether Lee was authorized by the federal government to sell the Ritz Cabaret on its behalf. This shows bad faith and an improper purpose – additional grounds for sanctions.

## III. Computation of attorney's fees owed

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) set the criteria for determining a reasonable attorney's fee:

> 1) The time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal service properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the undesirability of the case; 11) the nature and length of the professional relationship with the client; 12) awards in similar cases.

### A.    Time and Labor Required

The itemization of Defendants' attorneys' time and expenses to date, attached as exhibits, show a total of 235.45 hours of legal services provided and $230.85 in expenses for attorney Brenda Grantland (See Exhibit 1), and a total of 15.45 hours of legal services provided and $159.63 in expenses for local attorney David Albright (See Exhibits 2, 3 and 4).  It is likely that additional charges will be incurred in relation to this petition and the show cause hearing.

To date, Defendant has paid Ms. Grantland $29,215.92 for her fees and expenses through December 10, 2003, and has paid Mr. Albright $5,000 in advance retainers.   Additionally, Defendant requests reimbursement for the $1,000.00 paid to Charles Bernstein to be local counsel earlier in the proceedings.

Defendant and his counsel are asking that the Court order Plaintiff and/or his attorney to reimburse him for the fees he has already paid his counsel, and to pay their additional fees directly to them.

**B.    The novelty and difficulty of the questions and the skill required to perform the legal services properly**

This case involved fairly sophisticated issues of civil rights and defamation law.   Plaintiff's failure to do even the most cursory research before propounding legal arguments caused Defendant's attorneys to double their efforts.   Although the Court declined to exercise supplemental jurisdiction over the state law defamation claims, Defendant was nevertheless required to thoroughly research those issues, and Plaintiff did not state a claim for defamation either.

**C.    Time limitations and the preclusion of other employment**

Because of the amount of research defense counsel had to do to refute the Plaintiff's ungrounded arguments, this case required an extensive time commitment each time a motion was due.   This precluded counsel from devoting time to other cases, and often required working overtime and on weekends to make the deadlines.

**D.    The customary fee**

Ms. Grantland's customary fee has been $250 per hour from 1993 to present.  See *Shelden v. United States*, 41 Fed.Cl. 347 (1998). She agreed to represent Francis Lee at the discounted rate of $200 per hour because he had so many legal problems and limited financial resources from which to fund litigation.  The hourly rate of Mr. Albright is appropriate for a litigation attorney who was admitted to this Honorable Court more than twenty-two years ago.

**E.    Whether the fee is fixed or contingent**

Although Defendant's counsel were promised to be paid by the hour, Lee did not have sufficient liquid assets to pay any part of Ms. Grantland's fees in this case until April 2004.  Defendant's financial difficulties also delayed until last month Lee's ability to pay local counsel David Albright anything beyond his initial $2,500 retainer.

**F.    The results obtained**

Defendant came close to winning the entire case on his Motion to Dismiss for failure to state a claim.  He then won on summary judgment.

**G.    The experience, reputation and ability of attorneys**

Attorney Brenda Grantland received her law degree from George Washington University in 1981, and started her own practice in 1982 in Washington, D.C..  She filed her first case under the Civil Rights Act in 1987.  *Patterson v. District of Columbia*, a § 1983 action challenging the constitutionality of certain practices of the District of Columbia in asset forfeiture proceedings, is still

pending on the issue of § 1988 attorneys fees. *Roseveare v. American Broadcasting Companies*, a *Bivens* conspiracy action in which Ms. Grantland represented the Plaintiffs against American Broadcasting Companies and Warner Bros., filed in U.S. District Court in Sacramento, California, was settled mid-trial in 2000 for a sum which Plaintiffs promised not to disclose.

Ms. Grantland has published three books on asset forfeiture, the latest of which is *FEAR's Asset Forfeiture Defense Manual* (Dec. 2001), published by Forfeiture Endangers American Rights Foundation. Her efforts in reforming federal forfeiture law were praised in a speech by U.S. Representative Henry Hyde before Congress on April 11, 2000, when the Civil Asset Forfeiture Reform Act of 2000 passed. See 106 Cong.Rec. at H2046. Ms. Grantland has been listed in Who's Who in America since 2000.

**H.    The undesirability of the case**

Francis Lee was in prison when he was served with process in this case. Most of his assets were tied up in the forfeiture proceedings, and the rest was being liquidated to raise the money to pay his debts and support his ex-wife and family. He did not have the money to pay counsel to defend this case. Ms. Grantland, who had represented him in his criminal sentencing and asset forfeiture proceedings, agreed to defend his case on the promise she would be paid when his money was freed up. She has represented Lee in this case since May 7, 2003, but was not paid anything at

all for it until April 26, 2004, when her bill was paid up through December 10, 2003.

Had Ms. Grantland not agreed to defend Lee on credit, it appears unlikely he would have had any defense at all.  Plaintiff should be made to reimburse Defendant for the fees he paid Ms. Grantland, and should be required to pay Ms. Grantland for the unpaid balance due on her fees from this case and additional fees incurred in litigating this motion.

Local counsel David Albright, and the prior local counsel, Charles Bernstein, were each paid retainers which should also be ordered reimbursed to Defendant by Plaintiff.  David Albright's further fees should be paid as well.

I.    **The nature and length of the professional relationship between attorney and client**

Ms. Grantland has represented Francis Lee in his criminal and asset forfeiture proceedings since July 2002.  The asset forfeiture proceedings resulted in the forfeiture of the Ritz Cabaret to the federal government.  This is the property Ron Hunt sued Lee for refusing to sell to him.

J.    **Awards in similar cases**

Brenda Grantland, as a Plaintiff's attorney, was successful in obtaining a $368,000 attorney's fee award (for her fees alone) against the U. S. Department of Justice in February 1999.  In *Shelden v. United States*, 41 Fed. Cl. 347 (1998), the court awarded $ 210,678.75 for her co-counsel, and $ 336,380 for Ms. Grantland, finding that $200 per hour was a reasonable rate for Ms. Grantland

in 1998.  After submitting supplemental fee petitions for the time spent litigating attorney's fees issues, the government settled by paying Ms. Grantland $367,989.44 and her co-counsel  $240,374.21.

### CONCLUSION

For the foregoing reasons this fee petition should be granted.

Respectfully submitted,

/S/ _____
Brenda Grantland
265 Miller Avenue
Mill Valley, CA 94941
(415) 380-9108

And

/S/ _____
DAVID F. ALBRIGHT, JR.
Bar #02234
Local counsel
Bennett & Albright, P.A.
200 E. Lexington Street
Suite 200
Baltimore, MD 21202
(410) 727-2168
Counsel for Defendants

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served by electronic file transfer upon Jimmy A. Bell, Law Office of Jimmy A. Bell, P.C., 9610 Marlboro Pike, Upper Marlboro, MD 20772, this _____ day of May, 2004.

/S/ _____
DAVID F. ALBRIGHT, JR.