## AGREEMENT OF SALE OF ASSETS

THIS AGREEMENT OF SALE, made this _22_ day of May, 2002, by and between **TRACEY, INC.** a Maryland Corporation, Party of the First Part, hereinafter referred to as "Seller", and **PHILIP BAST GAGNE and DENNIS ALVIANI** individually and on behalf of a Maryland legal entity to be formed, Party of the Second Part, hereinafter referred to as "Buyer".

### WITNESSETH

WHEREAS, the Seller desires to sell and the Buyer wishes to purchase the assets of the tavern, night club/cabaret business known as "RITZ CABARET", (the "Business") located at 504 S. Broadway, Baltimore, Maryland 21231 for and under the terms and conditions hereinafter provided.

1. Description of Business

Seller hereby bargains and sells unto Buyer and the latter does hereby purchase from the former, the aforementioned business, free from all liabilities, debts, mortgages, security interests, liens, and encumbrances whatsoever, and all of Seller's rights, title and interests in the business conducted on the premises, including, but not limited to the existing alcoholic beverage license, the existing entertainment license, all equipment and fixtures, an itemized list of which is attached hereto and made a part hereof as Schedule A, the goodwill, all customer contracts, all advertising contracts, the stock, inventory, existing telephone numbers, signs, the right to continue to trade on the premises under any trade name now used by the Sellers and all other assets

i

of whatsoever nature pertaining to the business.

   2.   Consideration

      Subject to the conditions herein stated, Buyer shall pay
to Sellers the sum of One Million Three Hundred Thousand
($1,300,000.00) Dollars including inventory which shall be valued
at a minimum of $ _____ at Seller's cost.

   3.   Allocation of Purchase Price

      The purchase price for the various assets of the business
more particularly described on Schedule A attached hereto and made
a part hereof, shall be allocated as follows:

         a.   alcoholic beverage license              $

         b.   entertainment license

         c.   goodwill

         d.   equipment and fixtures

         e.   inventory

         f.   covenant not to compete

   4.   Time and Manner of Payment

      Payment is to be made by Buyer to Sellers as follows:

      An initial deposit of One Hundred Thousand Dollars
($100,000.00) has been made prior to execution herein which deposit
is being held in escrow by RICHARD KELLER, ESQUIRE, Attorney for
the Seller in the herein transaction, in a non interest bearing
account which deposit shall be disbursed at settlement in
conformity with the herein contract.

      The balance, One Million Three Hundred Thousand
($1,300,000.00) Dollars shall be remitted in the following manner:

(a) The sum of Six Hundred Thousand ($600,000.00) Dollars shall be paid in certified or attorney escrow funds at the time of settlement.

(b) The balance, Six Hundred Thousand Dollars ($600,000.00) shall be financed by Seller payable over a ten year term with interest of Eight (8%) percent for the first two years then ten (10%) percent over the balance of the term. The indebtedness shall be secured by a first priority Security Agreement and a Financing Statement to be filed among the records of the SDAT.

5.  **Liabilities of Business**

Except as specifically provided herein, the Buyer shall not assume any of the Seller's debts and liabilities arising from the Seller's operation of the business prior to the date of settlement including but not limited to Federal withholding tax, Federal unemployment tax, Social Security, welfare Maryland withholding tax, Maryland unemployment tax, any payroll tax, penalties, liens, accounts payable, debts to creditors and government agencies or other charges incurred and/or owed by the Seller prior to settlement during Seller's operation of the business.

6.  **Adjustments, Bill of Sale and Other documents**

Seller shall at settlement and at its expense execute a Bill of Sale and file Articles of Transfer conveying to Buyer good, merchantable, unencumbered and unqualified title and right to the sole and undisputed possession of all assets sold

hereunder. Seller shall also at time of settlement deliver to Buyer all other documents including, but not limited to certifications, warranties, affidavits and agreements that may be required for the proper and effective transfer by Seller to Buyer of all assets of the business free and clear of all encumbrances (except as set forth in this Contract) which instruments shall contain usual warranties and affidavits of title. Seller shall pay all accounts payable, payroll taxes, sales taxes, personal property taxes, federal withholding tax, unemployment tax, Social Security, welfare, Maryland withholding and unemployment taxes and other charges including, but not limited to telephone, utilities, water bill, gas, electric and similar charges attributable to the conduct of the business accrued to the date of settlement. Seller shall file with the Federal, State and local governmental agencies all reports and documents required up to and including the date of settlement, including all final returns, Seller agrees to indemnify and save Buyer harmless from all loss, costs, liability or expense whatsoever which may be incurred by the Buyer due to the failure of Seller to file and/or pay any such tax or report within the time required by law. Buyer agrees to pay the Sales Tax in connection with the bulk transfer of assets on the equipment and fixtures transferred. The cost of the Alcoholic Beverage License and the Entertainment License shall be adjusted to the date of settlement. All other licenses being transferred hereunder shall be included in the purchase price.

7.    Representations and Warranties of Sellers

a.  Seller has good and marketable title to all assets, tangible or intangible, sold under this Agreement, and warrants that no other person or entity has any right, title or interest in any such assets.  All such assets shall at settlement be free and clear of all restrictions on transfer or assignment and of all encumbrances of whatsoever nature, including, but not limited to judgments, mortgages, security agreements, financing statements, tax assessments and tax liens.

b.  Seller is not bound by, and the business hereby being sold is not affected by, any contractual obligations not listed herein.

c.  Seller has complied with all applicable Federal, State and local statutes, laws, and regulations affecting the operation of the business, including, but not limited to, laws, ordinances, and regulations of any zoning, health, building, housing, fire, environmental or any other governmental authority.

d.  Seller has incurred no indebtedness of any kind or nature with respect to the operation of the aforesaid business and any of the assets sold hereunder, and no person has asserted any claim against Seller arising out of Seller's operation of the business.

e.  Seller has received no notice of any violation of any Federal, State or local statute, law or regulation which would affect the operation of the business.

f.  All furniture, fixtures and equipment are in good working condition as of the date of this Agreement.  Seller

5

warrants that at time of settlement the furniture, fixtures and equipment will be in good working condition; Seller will transfer and assign to the Buyer all warranties, if any, applicable to such furniture, fixtures and equipment.

g.    The Seller is a Maryland Corporation organized, validly existing and in good standing under the laws of the State of Maryland.

h.    The Parties have all requisite power and authority to execute and deliver this Agreement and perform all of its obligations hereunder and no consent or approval of any other person or governmental authority is required therefore.  The execution, delivery and performance of this Agreement and the asset purchase transaction by the Parties contemplated herein has been duly authorized by all necessary actions of the Parties.  This Agreement is a valid and binding obligation of the Seller and is enforceable against it in accordance with its terms and conditions.

i.    The execution and delivery of this Agreement by the Seller will not and does not violate any law, regulation, decree, writ, order or injunction and such action will not contravene the provisions of or constitute a default under any agreement to which the Seller is a party.

8.    Bulk Transfer

Seller shall comply with all requirements of Title 6, Bulk Transfer, Maryland Uniform Commercial Code, Commercial Law Article, including, but not limited to, furnishing Buyer with a list of all Seller's existing creditors, preparation of a schedule

of the property to be transferred pursuant to this Agreement, and cooperating with Buyer in giving notice to creditors, and Sellers shall execute such other documents and affidavits pertaining to creditors as may be required by Buyer.  Seller warrants that as of the date of this Agreement, Seller has no creditors other than those listed on Schedule B attached hereto and made a part hereof.

9.    Non-Competition - restrictive covenant

Seller and its principal   hereby agree not to enter, engage in, participate in, promote, own an interest in, become engaged in, become employed by or otherwise become involved in, directly or indirectly, individually or through any intermediary or association, partnership, corporation or any entity whatsoever, into  a  business  involving  the  operation  of  a  tavern,  night club/cabaret  business  within a radius of five (5) miles from the business  for  a  period  of  five   (5)  years  from  the  date  of settlement.  Neither Seller nor any stockholders, directors, partners, fiduciary or person in any manner related to Seller, whether for compensation or not, shall engage in or be in any manner associated with or involved in such business, including any aspect thereof, during such period of time within the aforesaid area.

Seller agrees not to communicate with any customer for the purpose of selling to or soliciting that customer of the Buyer of sales or services identical or similar to the those services of the Buyer.

Seller further agrees not to solicit, participate in or

07/28/02  SUN 17:47 FAX 2024887465               Nexus Gold Club                          ☑018

of the property to be transferred pursuant to this Agreement, and cooperating with Buyer in giving notice to creditors, and Sellers shall execute such other documents and affidavits pertaining to creditors as may be required by Buyer. Seller warrants that as of the date of this Agreement, Seller has no creditors other than those listed on Schedule B attached hereto and made a part hereof.

9.   Non-Competition - restrictive covenant

Seller and its principal   hereby agree not to enter, engage in, participate in, promote, own an interest in, become engaged in, become employed by or otherwise become involved in, directly or indirectly, individually or through any intermediary or association, partnership, corporation or any entity whatsoever, into  a  business  involving the operation of a tavern, night club/cabaret business within a radius of five (5) miles from the business for a period of five   (5) years from the date of settlement.  Neither Seller nor any stockholders, directors, partners, fiduciary or person in any manner related to Seller, whether for compensation or not, shall engage in or be in any manner associated with or involved in such business, including any aspect thereof, during such period of time within the aforesaid area.

Seller agrees not to communicate with any customer for the purpose of selling to or soliciting that customer of the Buyer of sales or services identical or similar to the those services of the Buyer.

Seller further agrees not to solicit, participate in or

promote the solicitation of any person who was employed by the Seller at any time during the five (5) year period, to leave the employ of the Buyer or hire or engage any person who was employed by the Buyer at any time during the five (5) year period.

Seller further agrees not to make any disparaging remarks about the Buyer's business, products, services or personnel or to interfere in any way with the Buyer's business, prospects or personnel except in its role as set forth in Paragraph 14 of this Agreement regarding training.

The Seller hereby acknowledges that the covenants contained in this paragraph are necessary in order to protect the good will of the Buyer's business and that those covenants are reasonable. However if any court determines that any restrictions set forth herein are unenforceable in accordance with its terms regarding duration, geographical limit or scope of prohibited activity, then the covenant shall be deemed to have been amended to the extent required to render it valid and enforceable. The adjudication shall not bee deemed to affect the validity or enforceability of the covenant in any jurisdiction other than the one in which the adjudication is made.

In the event that the Seller shall breach the terms of ths non-competition and restrictive covenant contained herein, the Buyer shall give the Seller written notice to correct the alleged breach and should the Seller not correct within fifteen (15) days of the receipt of such notice, the Seller will then be entitled to injunctive or other equitable relief after the cure period because

it will have caused irreparable injury and damage to the Buyer's business. The right of injunctive relief shall include the right to both preliminary and permanent injunction. The Buyer's right to equitable relief shall not preclude any other rights or remedies which the Buyer may have, all of which rights and remedies are cumulative.

If the Buyer files suit to enforce its rights under this paragraph then the successful party shall be entitled to recover from the other all expenses incurred by it in preparing for and litigating the case including, but not limited to investigative costs, court costs and reasonable attorney fees.

The Parties agree that this Paragraph shall survive settlement.

10. <u>Insurance</u>

Seller shall assign to Buyer at the time of settlement, if such assignments are agreed to by the insurers, all fire, liability, business interruptions, workmen's compensation, theft and other insurance policies of Seller applicable to the conduct of the business on the premises. Prepaid insurance premiums shall be adjusted to the date of settlement.

11. <u>Risk of Loss</u>

The business conducted on the premises shall be held at the risk of Seller until the date of settlement and the proceeds of any insurance payable on account of any fire or other casualty prior to settlement shall be payable to Buyer and applied to the purchase price.    In the event the insurance proceeds are

,

07/28/02  SUN 17:48 FAX 2024887465          Nexus Gold Club                    ☐021

insufficient to repair or replace any loss occasioned by such fire or casualty in full, Seller may void this contract. In the event of such fire or other casualty, either party shall have the option to declare this Agreement null and void and in such event all monies paid by Buyer on account shall be immediately refunded.

12.  Date of Settlement

Settlement shall take place in conjunction with the settlement of the fee simple property 504 S Broadway, Baltimore City, Maryland and shall occur within twenty-one (21) days of the written approval of the Baltimore City Board of Liquor License Commissioners of the herein Buyer, but no later than seventy five days following the execution of the herein Agreement of Sale of Assets; time being of the essence.

13.  Contingencies and Conditions

a.  This Agreement shall be fully contingent on the premises being approved by the Zoning Department, Health Department or any other governmental agency after inspection.  The Parties agree to request governmental inspection immediately upon execution of this Agreement.  Should any department require any improvements or repairs in order to complete the transfer hereunder, the Seller agrees to be responsible for same.

b.  This contract is further contingent upon the Buyer obtaining the fee simple property known as 504 Broadway pursuant to a Contract of Sale between FRANCIS LEE as Seller and the herein Buyers.  If for any reason buyer is unable to obtain clear title to the real property, this Agreement shall be void ab initio with a

07/28/02  SUN 17:48 FAX 2024887465          Nexus Gold Club                    ☐022
May 22  2002  4:02PM

full return of deposit.

c.   This Agreement is also contingent upon buyer being able to obtain the existing Baltimore City Alcoholic Beverage License and the existing Entertainment License with no further restrictions other than those that might be on the license of the Seller. Should this not be obtained, the herein Agreement shall be void *ab initio* with a full return of deposit.

d.   This Agreement is further contingent upon Seller being able to transfer title to the Business free and clear of any governmental (State, City and/or Federal) liens and  conditions of any kind. If governmental approval for the transfer of the assets is required, Seller agrees to obtain said clearance. If such are not obtained, this contract shall be void *ab initio* with an immediate return of deposit.

14.  <u>Training</u>

Seller or a designated manager shall provide on site consultation and training to the Buyer for two weeks following settlement. This paragraph shall survive settlement.

15.  <u>Commissions</u>

The parties herein acknowledge there are no real estate nor business brokers in the herein transaction and no commissions are therefore due.

16.  <u>Miscellaneous</u>

a.   Whenever used, the singular number shall include the plural, the plural the singular and the use of any gender shall be applicable to all genders.

spagagne.wpd                    11

07/28/02  SUN 17:48 FAX 2024887465          Nexus Gold Club                    @023
May 22. 2002  4:02PM

b.    All representations and warranties made hereunder shall survive the Closing for the benefit of all parties.

c.    This Agreement may not be altered except by written agreement of all parties hereto.

d.    The terms and provisions hereof shall be binding and inure to the benefit of the parties their personal representatives, administrators, heirs, successors and assigns.

e.    This Agreement shall be governed by and construed in accordance with the laws of the State of Maryland.

f.    If for any reason any provision herein is  determined to be invalid it shall not impair or otherwise affect the validity of the other provisions of this Agreement.  Moreover, the parties agree to replace such invalid provision with a substitute provision that will satisfy the intent of the parties.

g.    All Exhibits and schedules attached hereto shall be deemed a part hereof fo the same extent as if fully set forth herein.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement of Sale on the day and year first above written.


WITNESS:                              TRACEY, INC.



_____         by _____
                                Francis Lee, President
                                Seller



aosgagne.wpd                    12

07/28/02  SUN 17:49 FAX 2024887465          Nexus Gold Club                    @024



**Philip Bast Gagne**
Individually and on behalf of
a legal entity to be formed

**Dennis Alviani**
Individually and on behalf of
a legal entity to be formed

**Buyer**

aoagagne.wpd                    15