LEXSEE 77 FED. APPX. 155

In Re: JACK L. GOULD, Esq.; CHRISTOPHER P. SCHEWE, Esq., Appellants.
LINDA HARSHBARGER, Plaintiff, v. PROFESSIONAL EVALUATION GROUP, INCORPORATED, Defendant-Appellee.

No. 00-2256

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

77 Fed. Appx. 155; 2003 U.S. App. LEXIS 20370

May 9, 2001, Argued
October 7, 2003, Decided

**NOTICE:** [**1] RULES OF THE FOURTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:** Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Gerald Bruce Lee, District Judge. (CA-99-1513-A).

**DISPOSITION:** Affirmed in part, vacated in part, and remanded with instructions.

**LexisNexis (TM) HEADNOTES - Core Concepts:**

**COUNSEL:** ARGUED: Jack L. Gould, Fairfax, Virginia, for Appellants. David Ray Lasso, VENABLE, BAETJER & HOWARD, L.L.P., McLean, Virginia, for Appellee.

ON BRIEF: Christopher P. Schewe, Alexandria, Virginia, for Appellants. John M. Bredehoft, Linda M. Jackson, VENABLE, BAETJER & HOWARD, L.L.P., McLean, Virginia, for Appellee.

**JUDGES:** Before WIDENER, Circuit Judge, HAMILTON, Senior Circuit Judge, and James H. MICHAEL, Jr., Senior United States District Judge for the Western District of Virginia, sitting by designation.

**OPINION:** [*157] PER CURIAM:

I.

Linda Harshbarger appeals from an order of the district court requiring her attorneys to pay attorney's fees and costs of Professional Evaluation Group, Inc. pursuant to *28 U.S.C. § 1927*. The district court based this award on its finding that Harshbarger's attorneys, Jack Gould and Christopher Schewe, introduced [**2] prejudicial evidence in the presence of the jury that the court had excluded by its prior evidentiary rulings and that Harshbarger's attorneys had assured the court would not be offered into evidence. We affirm in part, vacate in part, and remand with instructions.

II.

This appeal arises from an incident which occurred during the trial of Mrs. Harshbarger's suit against her employer, claiming workplace sexual harassment for the conduct of her supervisor, William Tadlock, a former employee. The Group is in the business of coordinating doctors as independent contractors to evaluate insurance claims, providing medical transcription services for those doctors, and reporting their medical findings to insurance providers. Before trial, the Group brought a motion in limine to exclude certain medical reports identified as Plaintiff's Exhibit 12. It later withdrew the motion but, as the district court related, the Group's general objection to the introduction of such evidence [referring to the medical reports] had not been withdrawn.

During the direct examination of plaintiff's witness, Christine Hall, Gould asked her to identify Plaintiff's Exhibit 12, the medical reports which were [**3] the subject of the Group's abandoned motion in limine. Linda Jackson, counsel for the Group, objected to the question on the ground that the medical reports were irrelevant. The district court held a sidebar conference on Mrs. Jackson's objection. At the sidebar conference, Mrs. Jackson asked for a proffer of the evidence Gould sought to introduce through the reports and Hall's testimony about the reports. Gould stated that:

> The proffer, in general terms, Your Honor, is to show, shall we say, less than above-board practices by high up people in the company, which I think affects the credibility of the principals [of the Group] and Mr. Tadlock. . .. Occasionally, routinely, [medical] reports would be changed, either by Mr. Puleio [a principal of the Group] or by Mr. Tadlock, without the doctor's approval. And the doctor's name would be signed by Tadlock, or at his direction, by this lady, this witness. And that's what the testimony has to do with.

The court later inquired into the relevance of the proffered evidence.

> Court: What does all of this have to do with sexual harassment?
>
> Schewe: Nothing directly. It has to do with credibility.
>
> Court: [**4] Of whom, the corporation?
>
> Gould: Yes.
>
> Court: Generally.
>
> Gould: Well, of the three directors, of two of the three directors, Tadlock and Puleio.

Mrs. Jackson indicated that the Group would withdraw its objection to the medical reports if two conditions were satisfied. First, the Group sought to use the deposition testimony of Ronald Puleio, a principal of the Group, to explain why the alterations to the medical reports were not fraudulent. Second, the Group planned to offer evidence that the witness, Christine [*158] Hall, had stolen the medical reports from the Group and had provided them to other female employees who used them as leverage in negotiations for settlement of their sexual harassment claims against the Group.

The court again questioned the probative value of the medical reports and also considered whether the conditions the Group imposed upon its stipulation to the admissibility of the reports could be satisfied.

> Court: Let me say this . . . I don't see how this tends to prove or disprove sexual harassment. I don't know if it has anything to do with the termination, why she was terminated.
>
> Gould: It does not.
>
> Court: And to generally impugn [**5] the integrity of a company generally, I don't see where it helps the jury decide whether or not there as a hostile work environment to which Ms. Hall or the plaintiff was subjected. So, if you all agree you want it in, I'll let it in, but I don't see how it's relevant.
>
> Jackson: Again, I don't have a problem, as long as we're allowed to bring in those two points.
>
> Court: I understand what you said. To me, it creates a whole separate issue that does not help to define the trial, to me, but if you all want it in, I'll --
>
> Gould: I certainly object to reading in deposition testimony of a principal of the company [Puleio] who has been down here since Tadlock was fired, many times, and who could come down for this trial.
>
> * * *
>
> Gould: We won't use [the medical reports] in our case-in-chief. I may only use them, if appropriate, in rebuttal, and it may not be appropriate.
>
> Court: Okay Jackson: I don't think that gives me the kind of confirmation that I -- Court: Well, I really have questions about whether or not [Ronald Puleio], being in New York, is unavailable for purposes of civil trial, under the Federal Rules of Civil Procedure [such that his deposition testimony [**6] would be admissible ]. If you can show me a case or rule that says that, I'll certainly consider it.
>
> Jackson: In that case . . . I would like the Court to issue a ruling, if it could, now, on the relevance of the documents. In that case, I would maintain my objection, the relevance, undue prejudice, this is not related to issues in the case --
>
> Gould: We withdraw them [the medical reports ].
>
> * * *
>
> Jackson: It would distract the jury from the main issues in the case.
>
> * * *

> So, I'm renewing our motion in limine.
>
> Court: At this moment, as I understand it, the plaintiff is not going to offer this testimony. So I'm, not going to make an academic ruling.

The district court concluded that "the allegedly altered medical reports would not to be presented during the trial in any light, most notably not for use in attacking the credibility of the company or its principals."

Again, in his redirect examination of Christine Hall, Gould asked questions which appeared to elicit testimony regarding the allegedly falsified medical reports, prompting the court to interrupt the questioning.

> Gould: You were accused of wrongdoing by the company, correct?
>
> [*159]
> Witness: [**7] I was accused of checks. I never knew what checks. Yes.
>
> Gould: Did you have any conversations with Mr. Sheehy or Mr. Puleio, or both of them, about any improprieties in the office after Tadlock was dismissed?
>
> Witness: What do you mean?
>
> * * *
>
> Court: You [Gould] may be asking to go to something else, but the question is so open-ended it seems to open up the issues of those reports and fabrications, which I don't really want to hold a trial on. What are you going into?
>
> Gould: They have attacked her credibility, or honesty, and they used the word "embezzlement" . . . when she was cross-examined . . . .
>
> What I want to do is to show that she came for ward -- after Mr. Tadlock was gone, she no longer had a fear of him, and she brought to their attention certain dishonest practices that she thought should be corrected. But I think I have to be able to rehabilitate her. And it has to do -- I know it has to do with not only the report that we talked about earlier at the bench, but she will testify that she told them routinely, routinely Tadlock used to change records. And she told them that, and they said to do things different.
>
> Jackson: Same objection, Your [**8] Honor. Those medical reports were stolen to extort a settlement from the company. They had nothing to do with -- they had nothing to do with the sexual harassment issues. . . . If these medical records come up, they are not related to the substantive charges here. These medical records were taken from the office to extort a settlement.
>
> * * *
>
> Schewe: We're not putting records in; just going to ask her.
>
> Court: No, I'm not going to have a mini trial on this. [Defendant's] objection sustained.

The district court concluded based on this sidebar conference that it was objectively evident that the court had ruled that the disputed medical reports were inadmissible.

Later, during the Group's direct examination of Tadlock, Mrs. Jackson asked about vulgar jokes that had been told in the office and, in particular, vulgar jokes told to Group employees by doctors working as independent contractors for the Group. Tadlock responded:

> I think you and the jury need to understand that Professional Evaluation Group has an immaculate reputation as a leading medical group in this area, in the Washington, D.C. area, and is looked upon extremely favorably and as an extremely professional [**9] organization.

Later, during Gould's cross-examination of Tadlock, Gould asked Tadlock about this assessment of the Group's reputation.

> Gould: And . . . you told us yesterday, and I want to make sure that I'm correct, you told us that the company had an immaculate professional reputation; is that right?
>
> Mr. Tadlock: In my opinion it did, yes.
>
> Gould: Is it not correct, Mr. Tadlock, that you routinely altered medical --

Mrs. Jackson's immediate objection on behalf of the Group interrupted Gould's question and the court held a bench conference on her objection. During that

conference, Jackson moved for a mistrial, which the court subsequently granted. In defense of his conduct, Gould argued that Tadlock's testimony that the Group had an "immaculate reputation" opened the door **[*160]** to his impeachment as a principal of the Group who allegedly participated in falsifying the medical reports. Gould argued to the district court that he understood the court's earlier rulings about the medical reports to extend only to their admissibility in the plaintiff's case-in-chief and not to their admissibility for purposes of impeachment. Gould also emphasized that he did not seek **[**10]** to introduce the medical reports themselves as extrinsic evidence of the allegedly fraudulent alterations, but only to ask Tadlock whether he had altered them.

The district court concluded that Tadlock's statements about the nature of the company's reputation did not open the door to impeachment using the medical reports. The district court further noted that Gould failed to approach the bench and request reconsideration of the prior evidentiary ruling before asking the question. The district court concluded that a curative instruction would not remedy the prejudice caused by the question and granted the Group's motion for a mistrial.

The Group also moved for attorney's fees and costs. The district court found that "plaintiff's counsel recklessly flouted the Court's ruling and multiplied the proceedings by placing inadmissible evidence before the jury after being directed by the court not to do so." The district court further noted that plaintiff's counsel had withdrawn "the same evidence from use in any capacity in the trial during sidebar conferences . . . ." Finally, the district court noted that the conduct of plaintiff's counsel multiplied the proceedings, resulting in excess **[**11]** costs to the Group. Based on these findings, the district court exercised its authority pursuant to *28 U.S.C. § 1927* to grant the Group's motion and ordered both Gould and Schewe to "pay, in equal proportions, the amount of $ 17,677.86 to Defendant." n1

n1 No question is made as to the amount of $ 17,677.86.

Subsequent to the mistrial, the district court ordered the parties to mediate before another district judge. As a result of those negotiations, Mrs. Harshbarger reached a settlement of her claims with the Group and entered a voluntary dismissal of her suit. Accordingly, neither party appeals from the district court's evidentiary rulings or its judgment granting a mistrial. The only issue presented by this appeal is the propriety of the district court's order granting attorney's fees and costs to the Group against attorneys Gould and Schewe pursuant to *28 U.S.C. § 1927*.

III.

We first address Schewe's argument that the district court's award of attorney's **[**12]** fees against him was without proper notice, in violation of his due process rights. Jackson's oral motion for attorney's fees in open court requested that attorney's fees be assessed either against Mrs. Harshbarger "or her counsel," without specifying whether the Group sought sanctions against the plaintiff, or Gould, or Schewe, or both, of plaintiff's counsel. The district court's scheduling instruction from the bench, however, stated that the court would give Mrs. Jackson until June 2nd to file her itemization of fees and costs, and "give *Mr. Gould* until the 9th [of June] to submit his opposition [to the Group's motion for attorney's fees]." (emphasis added) The Group clearly understood this to mean that only sanctions against Gould would be considered by the court, as demonstrated by the written motion for attorney's fees the Group later submitted to the court which sought sanctions only against Gould. Although Schewe attended the sanctions hearing and **[*161]** testified, the memoranda filed by Mrs. Harshbarger, through counsel, in opposition to the motion for sanctions only presented arguments against the imposition of sanctions against Gould. (Memoranda in district court record) **[**13]**

"Like other sanctions, attorney's fees should not be assessed lightly or without fair notice . . . ." *Roadway Express, Inc. v. Piper, 447 U.S. 752, 767, 65 L. Ed. 2d 488, 100 S. Ct. 2455 (1980)*. See also *Kunstler v. Britt, 914 F.2d 505, 522 (4th Cir. 1990)* (reversing *Rule 11* sanctions against plaintiff's attorneys because they were not given adequate opportunity to respond to defendant's previously submitted fee statements as required by due process). Because Schewe had no notice that the district court was considering sanctions against him and no opportunity to present the district court with his argument against the sanctions, we vacate the imposition of attorney's fees and costs against Schewe.

IV.

We now consider Gould's argument that his conduct did not warrant sanctions. The district court sanctioned Gould under the authority to award statutory attorney's fees conferred by *28 U.S.C. § 1927* which provides:

> Any attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the Court to satisfy **[**14]** personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct.

*28 U.S.C.A. § 1927 (1994).*

"*Section 1927* focuses on the conduct of the litigation and not on its merits." *DeBauche v. Trani, 191 F.3d 499, 511 (4th Cir. 1999)*. Merely negligent conduct will not support an imposition of sanctions under *28 U.S.C. § 1927*. See *United States v. Wallace, 296 U.S. App. D.C. 93, 964 F.2d 1214, 1219 (D.C. Cir. 1992)*. Instead, *§ 1927* requires "a finding of counsel's bad faith as a precondition to the imposition of fees." See *Chaudhry v. Gallerizzo, 174 F.3d 394, 411 n.14 (4th Cir. 1999)* (internal quotations omitted). Thus, *§ 1927* authorizes sanctions only when counsel's bad faith conduct multiplies the proceedings, resulting in excess costs for the opposing party.

A district court's decision to impose sanctions is entitled to substantial deference because the district court "is in the best position to review the factual circumstances and render an informed judgment as [it] is intimately involved with the case, the litigants, and the attorneys **[**15]** on a daily basis." *Blue v. United States Dep't of the Army, 914 F.2d 525, 538 (4th Cir. 1990)* (internal quotations omitted) (alteration in original). We review the district court's decision to impose sanctions under *§ 1927* for an abuse of discretion. *Chaudhry v. Gallerizzo, 174 F.3d 394, 410 (4th Cir. 1999)*; see *Miltier v. Beorn, 896 F.2d 848, 853 (4th Cir. 1990)*. A district court's finding of bad faith, however, is a factual finding subject to review only for clear error. See *Wallace, 964 F.2d at 1217*.

Gould argues on appeal that the district court abused its discretion by imposing sanctions against him on the grounds that his question to Tadlock about the medical reports was a vexatious, unreasonable, and bad-faith violation of the court's evidentiary rulings. Gould asserts that the district court's rulings did not clearly prohibit him from asking questions about the medical reports for the purpose of impeachment. Gould further argues that he did not, as the district court concluded, represent to the court that he would ask no questions **[*162]** related to the medical reports. We find the argument unpersuasive.

The district **[**16]** court concluded that in view of the statements made by the court and attorneys in the sidebar conferences at trial, it was objectively unequivocal that the court had ruled that the medical reports and related testimony were inadmissible. We agree. At the second sidebar conference conducted on the issue of the medical reports, after the district court interrupted a question which appeared to elicit testimony about the medical reports, Mrs. Jackson renewed her objection to the medical reports. At that time the following colloquy took place:

> MR. SCHEWE: We're not putting records in, just going to ask her.
>
> COURT: No, I'm not going to have a mini-trial on this. [Defendant's] objection sustained.

Thus, we agree with the district court that "it was objectively unequivocal that the allegedly altered medical reports were not to be used as evidence in the trial or for any other purpose . . . ."

Gould further argues that, even if the district court ruled that testimony about the medical reports was not admissible on the merits, the court had not ruled on the permissibility of questions about the reports in cross-examination for the purpose of impeachment. We find this argument **[**17]** unconvincing for the same reason.

Additionally, the Federal Rules of Evidence state that specific instances of conduct may be inquired into on cross-examination "*in the discretion of the district court*, if probative of truthfulness or untruthfulness" of the witness or of another witness. *Fed. R. Evid. 608(b)* (emphasis added). The district court's discretion to allow impeachment of a witness with specific instances of conduct is guided by *Rule 403*. *Rule 403* empowers a trial court to exclude evidence if the probative value of that evidence is outweighed by the unfair prejudice it creates or by its tendency to cause confusion of the issues or to otherwise mislead the jury. *Fed. R. Evid. 403*. The Rules Advisory Committee's note to *Rule 608(b)* clarifies that "the overriding protection of *Rule 403*" acts as a safeguard against abuse of *Rule 608*. See *Fed. R. Evid. 608(b)* advisory committee's note; 28 Wright & Gold, *Fed. Practice and Procedure*: Evid. § 6118 (1993).

As stated, Gould argued that the medical reports were admissible because they were probative of Tadlock's credibility, **[**18]** even though they were not relevant to the merits of the trial. The basis of Mrs. Jackson's original objection to the medical reports on behalf of the Group, which she subsequently renewed in opposition to Gould's redirect question eliciting testimony about the reports, was that the reports were irrelevant and prejudicial and that they would distract the jury from the main issues in the case. In response, the district court noted in the first sidebar conference that the reports "created a whole separate issue that [did] not help to define the trial." After the second sidebar conference, the district court clearly sustained Mrs. Jackson's objection that the medical reports and related questions did not survive *Rule 403* scrutiny. We conclude that a reasonable attorney would have been put on notice that questions concerning the medical reports for purposes of impeachment were prohibited because the district court had ruled that the prejudice and confusion of the issues that would result from testimony about the reports would outweigh their probative value for the issue of Tadlock's credibility. The district court did not abuse its discretion in declining to admit the evidence for the **[**19]** purpose

of impeachment.

[*163] Gould also argues that the district court erred by concluding that he had represented to the court that he would not elicit testimony about the reports and by considering that representation, which the court concluded was misleading, as an additional basis for sanctions. Gould argues that he expressly reserved the possibility that he would raise the issue of the medical reports later in the trial when he stated to the court that "we won't use [the medical reports] in our case-in-chief. I may only use them, if appropriate, in rebuttal, and it may not be appropriate." The sidebar did not end there, however. After Gould's representation to the court that he would only use the medical reports in rebuttal, Mrs. Jackson, concerned that she would not be able to use the deposition testimony of Puleio to explain the alleged alterations to the medical reports, asked for a clear ruling from the court on her objection to the "relevance and undue prejudice" caused by the reports. At that point, Gould interrupted Mrs. Jackson's explanation for the basis of her objection, stating that "we withdraw them [the medical reports]." On the basis of this statement, the court [**20] declined to rule on Mrs. Jackson's objection because such a ruling would be academic in light of the court's understanding that Gould was "not going to offer this testimony." In summary, Gould reserved the right to raise the medical reports later in trial, to which possibility Jackson objected and sought an immediate ruling on the admissibility of the reports, prompting Gould to revise his statement and unconditionally withdraw the medical reports. We agree with the district court that Gould represented to the court that he would not pursue questions about the medical reports.

We also find no abuse of discretion in the district court's finding that Gould acted vexatiously and unreasonably. For reasons already discussed, we agree with the district court's conclusion that Gould represented to the court that he would not offer evidence about the medical reports. Gould tried to ask a question about the medical reports once without consulting the court and forced the court to interrupt his questioning and hold a sidebar conference which culminated in a clear ruling that testimony regarding the reports was inadmissible. Schewe testified at a hearing on the motion for sanctions that he and [**21] Gould consulted the night before the final day of trial and developed a plan to admit testimony about the medical reports as impeachment of Tadlock. He also testified that he and Gould had arranged for witnesses to be present to testify about the alleged alterations to the medical reports, should Tadlock deny the alterations on cross-examination. n2 We find no error in the district court's conclusion that the conduct of an experienced attorney who asks a forbidden question on these facts is in bad faith. Accordingly, we conclude that the district court did not abuse its discretion by awarding sanctions against Gould for unreasonable and vexatious conduct.

n2 Schewe testified that he did not believe *Rule 608* prohibited extrinsic evidence such as testimony offered to prove prior conduct denied by a witness on cross-examination.

Finally, Gould argues that his conduct did not result in multiplication of the proceedings or excess costs as required by *28 U.S.C. § 1927*. The district court concluded [**22] that Gould's disregard for the rulings of the court converted the last day of trial into a hearing on the motion for mistrial and awarded attorney's fees and costs to the Group reflecting the cost of the third day of trial. Gould speculates that completion of the trial would have taken as long as the hearings on the mistrial and that no additional proceedings were required. The effect of the mistrial, however, [*164] was to end the trial prematurely, leaving both Mrs. Harshbarger and the Group without resolution of the underlying claim. Gould's conjecture that the trial on the merits, if not cut short by the mistrial ruling, would have lasted as long as the hearing on the mistrial, ignores the fundamental distinction between conclusion of a trial on the merits and a mistrial. The attorney's costs incurred by the Group for the mistrial proceedings were in no way related to the merits of its defense and were not expenses that the Group would have incurred absent Gould's conduct. We agree with the district court that Gould multiplied the proceedings resulting in excess costs for PEG within the meaning of *§ 1927*. Gould also challenges the district court's calculation of the excess costs, expenses [**23] and attorney's fees incurred because of the mistrial. We review the district court's order for abuse of discretion, however, and find no such abuse here.

V.

In summary, the district court's order is vacated to the extent that it awards attorney's fees and costs against Schewe and affirmed to the extent that it awards attorney's fees and costs against Gould. Because the district court's order instructed Schewe and Gould to pay the sum of $ 17,677.86 in equal proportions, we eliminate half of that award to reflect Schewe's contribution, and remand to the district court to award $ 8,838.93 in attorney's fees, costs and expenses against Gould, consistent with this opinion.

Accordingly, the judgment of the district court is

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED WITH INSTRUCTIONS.*